# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

MICHAEL H. BAER
Trial Attorney (New York Bar No. 5384300)
U.S. Department of Justice,
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Telephone:   (202) 305-8573
Facsimile:   (202) 616-8470
E-mail:      Michael.H.Baer@usdoj.gov

*Counsel for Defendants*

| | |
|---|---|
| **WESTERN ORGANIZATION OF RESOURCE COUNCILS,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**RYAN ZINKE, *et al.*,**<br><br>**Defendants.** | **CV 18-139-M-DWM**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ....................................................................................1

BACKGROUND ....................................................................................4

I.    FACA and Its Implementing Regulations ........................................4

II.   The Royalty Policy Committee ...................................................6

III.  The Instant Action ......................................................................8

LEGAL STANDARD...............................................................................10

ARGUMENT ..........................................................................................11

I.    Each of Plaintiff's Claims Should Be Dismissed. .........................11

    A.    Plaintiff Lacks Standing for Three of Its Four Claims.......................12

        1.    *Plaintiff Does Not Have Associational Standing*...................14

        2.    *Plaintiff Does Not Have Organizational Standing*.................19

    B.    Counts Three and Four Are Non-Justiciable.............................21

        1.    *Ninth Circuit Precedent Forecloses Plaintiff's § 5(b)(2) Claim*..............................................................................22

        2.    *Plaintiff's § 5(b)(3) Claim Also Is Not Justiciable*…....……...26

    C.    The RPC Has Adhered to the Applicable Rules Governing Its Meetings and Records. ..........................................................28

    D.    Defendants Complied with the Provisions that Govern the Establishment of the RPC. ....................................................33

II.   Plaintiff Has Not Demonstrated Any Irreparable Harm.................35

III.  The Balance of Equities and Public Interest Strongly Favor Defendants. ...............................................................................37

CONCLUSION.........................................................................................38

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                    <u>Page(s)</u>

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ............................................................ 10, 35, 37

*Am. Trucking Ass'ns v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) ...................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................11

*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Calif. Dep't of Transp.*,
   713 F.3d 1187 (9th Cir. 2013) .................................................................. 14, 15

*Auer v. Robbins*,
   519 U.S. 452 (1997) ................................................................................ 32-33

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................11

*Benisek v. Lamone*,
   138 S. Ct. 1942 (2018)................................................................................10

*Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*,
   452 F. Supp. 2d 924 (N.D. Cal. 2006)........................................................14

*Colorado Environmental Coalition v. Wenker*,
   353 F.3d 1221 (10th Cir. 2004).......................................................... 25, 27-28

*Ctr. for Law & Educ. v. Dep't of Educ.*,
   396 F.3d 1152 (D.C. Cir. 2005)..................................................................20

*Ctr. for Policy Analysis on Trade & Health (CPATH) v. Office of U.S. Trade Representative*,
   540 F.3d 940 (9th Cir. 2008), *as amended* (Oct. 8, 2008) ............... 22, 23, 24, 25

*Cummock v. Gore*,
   180 F.3d 282 (D.C. Cir. 1999).....................................................................5

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ................................................................8

*Doe v. Shalala*,
   862 F. Supp. 1421 (D. Md. 1994).........................................................23

*Doe v. Vill. of Mamaroneck*,
   462 F. Supp. 2d 520 (S.D.N.Y. 2006) ................................................20

*Dollar Rent A Car of Washington, Inc. v. Travelers Indem. Co.*,
   774 F.2d 1371 (9th Cir. 1985) .............................................................35

*Drakes Bay Oyster Co. v. Jewell*,
   747 F.3d 1073 (9th Cir. 2014) ...................................................... 10, 37

*Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*,
   887 F.3d 906 (9th Cir. 2018) .................................................. 14, 18, 19

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ............................................................................22

*In re Gilead Sci. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) .............................................................11

*Kisor v. Wilkie*,
   No. 16-1929 (U.S. Dec. 10, 2018)…………………………………………..32

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ............................................................................11

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir. 2010) ...................................................... 13, 20

*Lawyers' Comm. for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity*,
   265 F. Supp. 3d 54 (D.D.C. 2017).......................................................36

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..................................................................... 12, 16

*Nat. Res. Def. Council v. Pena*,
   147 F.3d 1012 (D.C. Cir. 1998)...........................................................37

*Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*,
    711 F.2d 1071 (D.C. Cir. 1983).........................................................................18

*Nat'l Council of La Raza v. Cegavske*,
    800 F.3d 1032 (9th Cir. 2015).......................................................................15

*Nat'l Mining Ass'n v. Zinke*,
    877 F.3d 845 (9th Cir. 2017)........................................................................33

*Nken v. Holder*,
    556 U.S. 418 (2009) ....................................................................................37

*Nw. Ecosystem All. v. Office of the U.S. Trade Representative*,
    No. C99-1165R, 1999 WL 33526001 (W.D. Wash. Nov. 9, 1999).....................18

*Physicians Committee for Responsible Medicine v. Vilsack*,
    No. 16-CV-00069-LB, 2016 WL 5930585 (N.D. Cal. Oct. 12, 2016) ................26

*Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*,
    886 F.2d 419 (D.C. Cir. 1989)............................................................. 23, 26, 27

*Pub. Citizen v. U.S. Dep't of Justice*,
    491 U.S. 440 (1989) ....................................................................................13

*R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*,
    810 F.3d 827 (D.C. Cir. 2016) .....................................................................18

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004)................................................................. 11, 13

*San Luis & Delta-Mendota Water Auth. v. Haugrud*,
    848 F.3d 1216 (9th Cir. 2017), *as corrected* (Mar. 23, 2017) ............... 15, 17, 19

*Smith v. Pac. Properties & Dev. Corp.*,
    358 F.3d 1097 (9th Cir. 2004)......................................................................12

*Spencer Enters., Inc. v. United States*,
    345 F.3d 683 (9th Cir. 2003)........................................................................22

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) ..................................... 12, 16

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................. 13, 14, 18

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017) .......................................................................12

*United States v. Streich*,
    560 F.3d 926 (9th Cir. 2009) .............................................................21

*Wilderness Society, Inc. v. Rey*,
    622 F.3d 1256 (9th Cir. 2010) ...........................................................17

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ...................................................................... 10, 38

## Statutes

5 U.S.C. App. 2 § 2(b) ...........................................................................4

5 U.S.C. App. 2 § 3(2) ...........................................................................4

5 U.S.C. App. 2 § 5(b) .................................................................. *passim*

5 U.S.C. App. 2 § 9 ................................................................... 4, 33, 34

5 U.S.C. App. 2 § 10 ..........................................................................4, 5

5 U.S.C. § 701(a)(1)-(2)......................................................................21

5 U.S.C. § 706....................................................................................9

19 U.S.C. § 2155(c)(2).......................................................................23

## Adminstrative and Executive Materials

41 C.F.R. Pt. 102-3 ...............................................................................5

41 C.F.R. § 102-3.145.........................................................................32

41 C.F.R. § 102-3.160.........................................................................6

41 C.F.R. § 102-3.30(a) ......................................................................34

41 C.F.R. § 102-3.35(a) .........................................................5, 28

41 C.F.R. § 102-3.5..................................................................5

43 C.F.R. § 1784.0-1...............................................................29

43 C.F.R. § 1784.0-5(e) ..........................................................29

43 C.F.R. § 1784.2-1 ......................................................... 24, 25

43 C.F.R. § 1784.2-2 ...............................................................27

43 C.F.R. § 1784.6-1 ...............................................................25

Meeting of the Royalty Policy Committee of the Minerals Management Advisory
Board,
     60 Fed. Reg. 43,475-01 (Aug. 21, 1995) .............................................6

General Services Administration, Federal Advisory Committee Management,
     66 Fed. Reg. 37,728-01 (July 19, 2001) .............................................5

Department of Interior, Establishment Notice,
     69 Fed. Reg. 19,876-02 (Apr. 14, 2004).........................................6, 34

Royalty Policy Committee Establishment; Request for Nominations,
     82 Fed. Reg. 16,222-01 (Apr. 3, 2017)....................................... *passim*

Royalty Policy Committee; Public Meetings,

     82 Fed. Reg. 41,646-02 (Sept. 1, 2017)................................................7

     83 Fed. Reg. 6,613-02 (Feb. 14, 2018) ...............................................7

     83 Fed. Reg. 22,989-01 (May 17, 2018)................................................7

     83 Fed. Reg. 40,081-02 (Aug. 13, 2018) ........................................ 7-8

Notice of Establishment and Call for Nominations for the Bears Ears National
Monument Advisory Committee,
     83 Fed. Reg. 44,302-01 (Aug. 30, 2018) .................................... 30, 31

## **Other Authorities**

*Meeting Summaries*, Royalty Policy Committee,
    https://www.doi.gov/rpc/rpc-meeting-summaries....................................................8

*September 13, 2018 – Committee Meeting*, Royalty Policy Committee,
    https://www.doi.gov/rpc/september-13-2018-committee-meeting.........................8

*Subcommittee Information*, Royalty Policy Committee,
    https://www.doi.gov/rpc/subcommittee-information.......................................28-29

# EXHIBIT INDEX

**Exhibit**

Dep't of Interior, *Royalty Policy Committee Charter*, Apr. 21, 2017, *as amended* Oct. 2, 2018 .............................................................................1

Dep't of Interior, Department Manual, 112 DM 34.1 ..............................2

Minutes of Royalty Pol'y Comm. Sept. 2018 Meeting .............................3

Planning, Analysis, & Competitiveness Recommendations ......................4

Correspodence between Western Organization of Resource Councils and Royalty Policy Committee ......................................................................5

Letter from Beth Kaeding to Scott Angelle (Nov. 1, 2018) .................... 5-A

Letter from James Schindler to Beth Kaeding (Dec. 12, 2018) ...............5-B

Dep't of Interior, *Grand Staircase-Escalante National Monument Advisory Committee Charter*, Sept. 6, 2018 ........................................................6

# INTRODUCTION

Plaintiff in this case, the Western Organization of Resource Councils ("WORC"), has made plain its distaste for the current administration's views on the leasing of energy and mineral resources.  But although Plaintiff alleges that the Department of Interior ("Interior") has "abruptly reversed" policies that "accurately price[d] mineral deposits," thereby "scrapping environmental and taxpayer protections," Mem. Supp. Mot. Prelim. Inj. ("Pl.'s Br.") at 11, Doc. 18, Plaintiff does not target any of those policy changes with this suit.  Rather, it has concentrated its fire on the workings of an advisory committee empowered only to make recommendations about royalty-related policies.

That committee, the Royalty Policy Committee ("RPC" or "the Committee"), is a longstanding advisory committee that was reestablished in 2017 by the Secretary of the Interior, following a brief period in which it had been terminated.  The Committee advises the Secretary on issues related to the leasing of energy and mineral resources on federal and Indian lands, and it has pursued that mandate consistent with the requirements of the Federal Advisory Committee Act ("FACA"), a statute that places procedural restrictions on the establishment and operation of federal advisory committees. The RPC opens its meetings and records to the public, shares draft proposals with the public before they are considered by the Committee,

1

and provides the public with opportunities to comment on any proposal before the proposal is adopted by the Committee.

Plaintiff, however, contends that the federal Defendants have violated four provisions of FACA, and that the Committee's operations are therefore unlawful. Moreover, even though the Committee has been working and meeting for more than three months during the pendency of this suit, Plaintiff now claims that the damage allegedly being done by this advisory body is "irreparable" and that a preliminary injunction must issue before the RPC's next public meeting on January 31, 2019.

Plaintiff's claims are meritless and should be dismissed, which would obviate the need to consider Plaintiff's preliminary injunction motion.  At the outset, this Court lacks jurisdiction over three of Plaintiff's four claims because Plaintiff has failed to allege that its members, or the organization itself, has suffered an injury in fact.  Those claims raise procedural violations of FACA—*i.e.*, claims that the RPC was improperly established, is unfairly balanced, and is insufficiently insulated from the influence of special interests.  But WORC and its members have failed to identify a concrete interest that is threatened by Defendants' challenged actions—a prerequisite for standing to bring these claims.   Instead of allegations about particular members threatened by specific policies the RPC is considering, the amended complaint contains broad-brush criticisms of the RPC and conclusory allegations of harm to groups as broad as ranchers, westerners, and recreationists.

Two of Plaintiff's claims fail for another threshold reason: they rest on provisions of FACA that offer no meaningful standards against which to judge Defendants' actions.  Courts consistently have held that those provisions, which require advisory committees to be "fairly balanced" and protected against "inappropriate[] influence[]," are non-justiciable.  *See* 5 U.S.C. App. 2 §§ 5(b)(2), (3).  There is no basis for deviating from those holdings here.

Additionally, Plaintiff has not alleged plausible challenges to the establishment of the RPC or to the manner in which the RPC has handled access to meetings and Committee records.  The RPC consistently has complied with FACA and the applicable regulations that govern public access to, and participation in, the Committee's work.  Plaintiff's arguments to the contrary rest on a misapplication of regulations from the Bureau of Land Management ("BLM"), which is a component of Interior that neither administers nor regulates the RPC, and other invented procedural hoops.

For the same reasons the amended complaint should be dismissed, Plaintiff is unlikely to succeed on the merits in requesting a preliminary injunction.  Moreover, Plaintiff has failed to explain how permitting the RPC to continue to operate as an advisory body would cause WORC (or its members) irreparable harm, particularly given that WORC has engaged with the Committee's proposals in the past and remains free to do so for all future proposals the Committee considers.  Finally, the

public's interest lies in permitting the RPC to continue to do its important work. Plaintiff, accordingly, is not entitled to the extraordinary remedy of a preliminary injunction.

## BACKGROUND

### I.    FACA and Its Implementing Regulations

Congress enacted FACA to reduce the growing cost of unnecessary committees set up by the government to advise the President and federal agencies. The statute seeks to eliminate committees that have outgrown their usefulness and impose uniform procedures on those that are indispensable. *See* 5 U.S.C. App. 2 § 2(b).  As relevant here, FACA defines an "advisory committee" to include "any committee . . . or other similar group, or any subcommittee or other subgroup thereof" that is "established" by statute, or "established or utilized" by one or more federal agencies, "in the interest of obtaining advice or recommendations for . . . one or more agencies or officers of the Federal Government[.]" *Id.* § 3(2).

FACA imposes an array of procedural requirements on the creation and operation of advisory committees.  An "advisory committee" cannot meet or take any action until a charter is filed with the head of the agency to which it reports.  5 U.S.C. App. 2 § 9(c).  Every "advisory committee" generally must give advance notice in the Federal Register of any meetings, *id.* § 10(a)(2), hold all meetings open to the public, *id.* §§ 10(a)(1) & (d), keep detailed meeting minutes and copies of all

4

reports received, issued, or approved by the advisory committee, *id.* § 10(c), and make its records available to the public for inspection and copying at a single location, *id.* § 10(b).  Additionally, advisory committees must be "fairly balanced in terms of the points of view represented and the functions to be performed[,]" *id.* § 5(b)(2), and the constituting agency must put in place "appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest[,]" *id.* § 5(b)(3).

Many of FACA's procedural requirements, however, do not apply to subgroups *within* a particular advisory committee or to certain committee tasks.  The General Services Administration ("GSA"), which "prescrib[es] regulatory guidelines and management controls applicable to advisory committees," *Cummock v. Gore*, 180 F.3d 282, 285 (D.C. Cir. 1999), has promulgated regulations that "establish[] the scope and applicability of the Act[] and outline[] specific exclusions from its coverage."  41 C.F.R. § 102-3.5; *see generally* 41 C.F.R. Pt. 102-3.  Of particular relevance here, "the requirements of the Act . . . *do not apply* to subcommittees of advisory committees that report to a parent advisory committee and not directly to a Federal officer or agency."  41 C.F.R. § 102-3.35(a) (emphasis added); *see also* GSA, Federal Advisory Committee Management, 66 Fed. Reg. 37,728, 37,729 (July 19, 2001) (explaining that, in most cases, subcommittees are

"not subject to the Act" because they typically "report only to a parent advisory committee"). Moreover, the GSA exempts "Preparatory work"—which includes "analyz[ing] relevant issues and facts in preparation for a meeting of the advisory committee" and "draft[ing] position papers for deliberation by the advisory committee"—from FACA's notice and open meeting requirements. 41 C.F.R. § 102-3.160(a); *see also id.* § 102-3.160(b) (similarly exempting "Administrative work").

## II.   The Royalty Policy Committee

The RPC was first established in 1995 to "provide advice on the Department[] [of Interior's] management of Federal and Indian minerals leases, revenues, and other minerals related policies." 60 Fed. Reg. 43,475 (Aug. 21, 1995). The RPC was renewed or re-chartered at several points during the ensuing decades, *see, e.g.*, 69 Fed. Reg. 19,876 (Apr. 14, 2004), and the Secretary established the current iteration of the Committee in 2017. *See* 82 Fed. Reg. 16,222 (Apr. 3, 2017).[1] The Committee's mandate is to "advise on current and emerging issues related to the determination of fair market value, and the collection of revenue from energy and mineral resources on Federal and Indian lands[,]" as well "on the potential impacts of proposed policies and regulations related to revenue collection from such

---

[1] Unless otherwise noted, references to the RPC in this brief are to the Committee that was established in 2017.

development[.]"  *Id.*  Seven senior Interior officials serve as nonvoting, ex-officio members of the Committee.  Dep't of Interior ("DOI"), *Royalty Policy Committee Charter* ("RPC Charter") ¶ 12, Apr. 21, 2017, *as amended* Oct. 2, 2018 (attached as Exhibit 1).[2]  The Committee also includes a) up to six representatives of governors of states that receive at least $10,000,000 annually in royalty revenues from federal leases, b) up to four representatives of Indian Tribes that are subject to laws relating to mineral development, c) up to six representatives of various mineral and/or energy stakeholders, and d) up to four members representing academic and public interest groups, as well as alternates.  *Id.*  Industry representatives thus comprise less than a third of the Committee's voting membership.

The Committee is administered by the Office of Natural Resources Revenue ("ONRR"), RPC Charter ¶ 6, which is the Interior component responsible for "collection and disbursement of royalty payments" from "leasing and production of natural resources and energy from Federal and Indian lands[,] onshore and on the Outer Continental Shelf."  DOI, Department Manual, 112 DM 34.1, (attached as Exhibit 2; the full manual is available at https://www.doi.gov/elips/browse).

The RPC has held four meetings to date, each of which has been noticed in the Federal Register and open to the public.  *See* 82 Fed. Reg. 41,646 (Sept. 1, 2017);

---

[2] The RPC Charter (as amended) is incorporated by reference into the amended complaint.  *See* Am. Compl. ¶ 102, Doc. 14.  The charter was amended on October 2, 2018, to reflect that the Secretary now appoints the Chair.  *See* RPC Charter ¶ 12.

83 Fed. Reg. 6,613 (Feb. 14, 2018); 83 Fed. Reg. 22,989 (May 17, 2018); 83 Fed. Reg. 40,081 (Aug. 13, 2018).  As those Federal Register notices reflect, the public has had two ways to comment on matters before the Committee: by submitting written comments in advance of each meeting, and by making oral comments at the meetings themselves.  Prior to each meeting, the RPC posts on its website all of the materials that will be considered by the Committee, including any recommendations from one of the RPC's subcommittees.  *See, e.g.*, *September 13, 2018- Committee Meeting*, Royalty Policy Committee, https://www.doi.gov/rpc/september-13-2018-committee-meeting (last visited Dec. 17, 2018).  After each meeting, the Committee posts detailed minutes that document the issues discussed, the public's comments (both oral and written), and the Committee's recommendations for Interior.  *See, e.g.*, Minutes of RPC Sept. 2018 Meeting (attached as Exhibit 3).[3]

## III.    The Instant Action

Plaintiff, a Montana-based environmental organization, initiated this suit on August 8, 2018.  Am. Compl. ¶ 17; Compl., Doc. 1.  Defendants moved to dismiss the initial complaint, Mot. Dismiss, Doc. 12, and that motion was denied as moot after Plaintiff filed its amended complaint on November 23, 2018.  *See* Order, Nov.

---

[3] The minutes from each RPC meeting are available on the "Meeting Summaries" page of the Committee's website, https://www.doi.gov/rpc/rpc-meeting-summaries. The Court may take judicial notice of the minutes.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).

28, 2018, Doc. 15.  The amended complaint names Ryan Zinke, the Secretary of the Interior; the Department of the Interior; Scott Angelle, the Director of the Bureau of Safety and Environmental Enforcement (and the Committee's Chairperson) [4]; the Bureau of Land Management ("BLM"); and Brian Steed, the Deputy Director of Policy and Programs at BLM, as defendants.  Am. Compl. ¶¶ 12-16.  Like the initial complaint, the amended complaint alleges four violations of FACA, all brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  *See id.* ¶¶ 103-114.  Count One alleges that Defendants failed to make certain required findings in establishing the RPC; Count Two alleges that Defendants have not provided the required level of public access to meetings, materials, and records; Count Three alleges that the RPC is unfairly balanced; and Count Four alleges that Defendants have not taken sufficient steps to prevent the Committee from being inappropriately influenced.  *Id.*

Five days after filings its amended complaint, Plaintiff added a motion for preliminary injunction to the mix.  Mot. Prelim. Inj., Doc. 17.  Plaintiff seeks to prohibit Defendants from holding *any* RPC meetings, or meetings of the Committee's members (including subcommittees and working groups), until the Committee  changes its membership, adopts new policies for subcommittee and

---

[4] Mr. Angelle was automatically substituted as a defendant, pursuant to Federal Rule of Civil Procedure 25(d), when the Committee's previous chair, Vincent DeVito, left Interior.

working group meetings and records, and releases ethics disclosures that Plaintiff claims are required. *Id.* Plaintiff seeks this Court's intervention before the RPC holds its next, long-scheduled meeting on January 31, 2019. Pl.'s Br. 12.

## LEGAL STANDARD

"[A] preliminary injunction is 'an extraordinary remedy never awarded as of right.'" *Benisek v. Lamone*, 138 S. Ct. 1942, 1943-44 (2018) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). A plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (citation omitted). In the wake of the Supreme Court's decision in *Winter*, the Ninth Circuit has determined that a "sliding scale" test for preliminary injunctions remains valid. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). That approach requires "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff[.]" *Id.* at 1135. Additionally, a mere "possibility" of irreparable harm is insufficient; irreparable harm must be *likely* absent an injunction. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's jurisdiction over the subject matter of the complaint.

The party invoking the court's jurisdiction must establish that the court has the requisite subject matter jurisdiction to grant the relief requested. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A Rule 12(b)(1) motion will be granted when, looking at the entirety of the complaint, its allegations fail to establish jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff's complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In reviewing a Rule 12(b)(6) motion, a court accepts as true all well-pleaded facts in the complaint, but is not required to accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## ARGUMENT

### I. Each of Plaintiff's Claims Should Be Dismissed.

Although the Court has two motions before it, it need only consider one; this case can, and should, be resolved by granting Defendants' motion to dismiss. Each

of Plaintiff's claims suffers from at least one fatal flaw—a lack of standing, a cause of action that is not justiciable, or a failure to state a claim.  Moreover, these shortcomings turn on questions of law, which means that even if the Court reaches Plaintiff's motion for preliminary injunction, WORC cannot show a likelihood of success on—or even serious questions going to—the merits.

### A.    Plaintiff Lacks Standing for Three of Its Four Claims.

Plaintiff has the burden of establishing all three elements of the "irreducible constitutional minimum of standing[.]"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Specifically, Plaintiff must show that is has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).  Plaintiff must establish these elements "for each claim [it] seeks to press and for each form of relief that is sought."  *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1647 (2017) (citation omitted).  And at the pleading stage, Plaintiff must "clearly allege facts demonstrating each element."  *Spokeo*, 136 S. Ct. at 1547 (citation omitted).

Plaintiff alleges standing "on behalf of its members" (associational standing) and "on its own behalf" (organizational standing).  Am. Compl. ¶¶ 19, 23; *see also Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004).  Under

either approach, however, the allegations in the amended complaint "are insufficient on their face to invoke federal jurisdiction" for three claims. *Safe Air for Everyone*, 373 F.3d at 1039. Specifically, Plaintiff has not alleged a concrete and particularized injury, fairly traceable to Defendants, stemming from the establishment of the RPC (Count One), the balance of the RPC's membership (Count Three), or the RPC's efforts to guard against inappropriate influence (Count Four).[5] Those three counts all hinge on procedural provisions of FACA that Plaintiff claims protect it and its members. Where, as here, a plaintiff alleges the "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*," the plaintiff lacks standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).[6]

---

[5] The Court can—and indeed, must—dismiss those claims without considering the four declarations submitted along with Plaintiff's motion for preliminary injunction. A plaintiff cannot cure a failure to sufficiently allege jurisdiction in the operative complaint through subsequent declarations. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

[6] The remaining count (Count Two) alleges a failure to provide access to certain meetings and records. *See* Am. Compl. ¶¶ 106-08. The Supreme Court has held that the denial of access to specific records or particular meetings "constitutes a sufficiently distinct injury to provide standing" where a plaintiff "has specifically requested, and been refused," the information and access it seeks. *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989). In the amended complaint, unlike the original complaint, Plaintiff has at least alleged a denial of access to meetings and materials. *See* Am. Compl. ¶ 69.

### 1. *Plaintiff Does Not Have Associational Standing.*

The first hurdle WORC must clear to establish associational standing is to "demonstrate that at least one of its members would otherwise have standing to sue in [the member's] own right[.]" *Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 917-18 (9th Cir. 2018) (alterations in original) (citation omitted). Plaintiff, however, has not made this showing.

As an initial matter, the amended complaint lacks any "specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm." *Summers*, 555 U.S. at 498. That shortcoming is "fatal to [plaintiff's] attempt to plead associational standing." *Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*, 452 F. Supp. 2d 924, 934 (N.D. Cal. 2006); *see also Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Calif. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013). In place of specific allegations about individual members, Plaintiff relies on broad characterizations of the groups it claims may be affected by policies the RPC may recommend—groups that plainly are more expansive than its own membership. *See Am. Compl.* ¶ 25. But of course, Plaintiff does not allege that *all* members of those groups—"split estate landowners[,]" "residents living near coal, oil and gas production[,]" and "westerners" who use public lands—are harmed by policies under consideration by the RPC or are members of WORC. *See id.* Rather, the complaint is silent as to which, if any, of

14

Plaintiff's members actually are harmed, and which, if any, policies under consideration pose an imminent threat.[7]

In an attempt to remedy that oversight—albeit an unavailing one, *see supra* at 13 n.5—Plaintiff has filed four declarations along with its preliminary injunction brief. *See* Pl.'s Br., Exs. A-1 (Sara Kendall), A-2 (Beth Kaeding), B-1 (Leland Turner), B-2 (Ellen Pfister), Docs. 18-1, 18-2. But the allegations in these declarations—the latter two of which are from WORC members—still fail to establish standing on behalf of any of Plaintiff's members. "To establish a procedural injury in fact, a plaintiff must allege that (1) the agency violated certain procedural rules; (2) these rules protect a plaintiff's concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." *San Luis & Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216, 1232 (9th Cir. 2017), *as corrected* (Mar. 23, 2017) (citation omitted). Plaintiff's declarations, however, do not show a concrete interest that is threatened by the RPC.

---

[7] Without that specificity, it is impossible to determine whether any member of WORC is actually threatened by a policy under consideration by the RPC. Accordingly, this is not one of the cases that the Ninth Circuit has hypothesized might exist, "where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury[.]" *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

Instead, any concrete interests the declarations describe pertain to projects that were undertaken before the current iteration of the RPC was constituted, are outside the RPC's purview, or both.  For instance, Mr. Turner expresses concern about pollution from mines that have already been leased or have leases pending before entities that are not the RPC.  *See* Pl.'s Br., Ex. B-1 ¶¶ 4-6.  Similarly, the Signal Peak Mine appears to be the principal source of Ms. Pfister's concerns.  *See* Ex. B-2 ¶¶ 6-24.  But "the balance of the federal coal in the approved [Signal Peak] mine plan" has apparently already been leased, *id.* ¶ 7, and Ms. Pfister alleges nothing to suggest that *the RPC* will take action that threatens her interests related to the Signal Peak Mine, *id.* ¶¶ 25-29.

When the declarants *do* mention the RPC, they express concerns that are insufficiently "'concrete and particularized' and 'actual or imminent'" to establish standing.  *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).  They rely instead on generalized concerns that the RPC will propose policies that make it "more likely that [they] will experience more and more harmful leasing near [their] home."  Pl.'s Br., Ex. B-1 ¶ 11; Ex. B-2 ¶ 25 (same).  These allegations mirror the speculation in the complaint that WORC's members will suffer environmental harms at an unidentified point in the future from unspecified policies.  *See, e.g.*, Am. Compl. ¶ 25.

Article III does not permit Plaintiff to rely on these generalities.   In *Wilderness Society, Inc. v. Rey*, 622 F.3d 1251 (9th Cir. 2010), for instance, the Ninth Circuit highlighted the kind of specific allegations necessary for a member of an environmental organization to demonstrate a sufficiently concrete interest. *See id.* at 1256 (linking standing to a showing that the member "repeatedly visited an area affected by a [specific] project, that he had concrete plans to do so again," and that his interests "would be harmed" if the particular project advanced without the procedural protections at issue).  Here, Plaintiff has failed to link any specific project that its members care about (like the Signal Peak Mine) to a particular policy under consideration at the RPC.  In fact, Plaintiff describes its members' injuries as stemming "from federal royalty policies" generally, rather than the RPC. Pl.'s Br. 36.

To the extent Plaintiff's argument is that *any* person who would benefit from *any* change in federal royalty policy has standing to raise FACA claims about the RPC, that just confirms that Plaintiff's theory of standing is not viable.  After all, in Plaintiff's telling, "air and water pollution . . . *inevitably* flow[] from overleasing."  Pl.'s Br. 11 (emphasis added); *see also* Am. Compl. ¶¶ 23, 25.  If a plaintiff could allege exposure to such environmental damage—resulting from a failure to adopt the plaintiff's broad policy preferences—as the basis for standing,

that "would be tantamount to eliminating the requirement of concrete, particularized injury in fact." *Summers*, 555 U.S. at 496.[8]

Finally, even if Plaintiff linked a specific policy under consideration at the RPC to a particular WORC member, there would remain an additional barrier to standing:  The RPC has no authority to implement royalty policies; only Interior does.  That distinction matters because, in the typical procedural injury case, the plaintiff identifies a particular agency decision that threatens its members and argues that there is "a reasonable probability that the [agency's] decision could be influenced" by correcting an alleged procedural deficiency attendant to that decision.  *Friends of Santa Clara River*, 887 F.3d at 920 (citation omitted).  Even in that "typical" case, the need for speculation about what an agency *might* do can be sufficient to defeat standing.  *See R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*, 810 F.3d 827, 830 (D.C. Cir. 2016).

---

[8] Both of the non-binding cases Plaintiff cites to bolster its procedural injury claim predate *Summers*.  *See* Pl.'s Br. 37 (citing *Nw. Ecosystem All. v. Office of the U.S. Trade Representative*, No. C99-1165R, 1999 WL 33526001, at *4-8 (W.D. Wash. Nov. 9, 1999), and *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1074 n.2 (D.C. Cir. 1983)).  In *Summers*, the Supreme Court made clear that standing requires "some concrete interest that is affected by the deprivation" of a procedural right.  555 U.S. at 496. The decisions Plaintiff cites did not apply that standard.  In *Northwest Ecosystem Alliance*, for example, the court held that the interest sufficient for standing was nothing more than the fact that the plaintiff environmental organizations were unable to "provide decisionmakers with contrary viewpoints."  1999 WL 33526001 at *3.

Here, however, substantially more speculation is required.  Changing the procedures that affect the RPC could directly affect, at most, what the RPC *recommends*.  The question of what policy Interior ultimately *adopts*—the question that is relevant to any alleged concrete interest for WORC's members—is entirely separate, and one that Plaintiff never addresses.  In fact, Plaintiff argues that this administration is dead-set on adopting policies with which WORC disagrees.  *See, e.g.*, Am. Compl. ¶¶ 50-51.  But if that is true, then even if changing the procedures governing the RPC led to recommendations that Plaintiff prefers, Interior would simply choose not to adopt those recommendations.

At bottom, Plaintiff has not alleged an injury in fact on behalf of its members because its claims about injury rest on an impermissibly "attenuated chain of conjecture[.]"[9]  *San Luis*, 848 F.3d at 1233 (citation omitted).

### 2.  *Plaintiff Does Not Have Organizational Standing.*

Plaintiff's allegations that is has standing as an organization in its own right similarly fail to establish a sufficient stake in the controversy for Counts One, Three, and Four.  The inquiry for organizational standing relies on the same test

---

[9] Although "the causation and redressability requirements for standing are relaxed" when "a plaintiff asserts a violation of a procedural right[,]" the requirements are "not toothless in procedural injury cases."  *Friends of Santa Clara River*, 887 F.3d at 918 (citation omitted).  Here, the degree of speculation required to establish that a specific WORC member has been injured is also reason to hold that any such injury is not fairly traceable to Defendants.  *See San Luis*, 848 F.3d at 1233.

used to assess "standing in the context of an individual plaintiff[.]" *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). To demonstrate injury in fact, an organization in WORC's shoes generally must allege that it has "suffered *both* a diversion of its resources and a frustration of its mission." *Lake Forest*, 624 F.3d at 1088 (citation omitted) (emphasis added); *see also Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1162 n.4 (D.C. Cir. 2005) (organization's "mere interest in a problem, no matter how longstanding[,] . . . is not sufficient by itself" for standing (citation omitted)).

WORC has not done so. Although the amended complaint mentions WORC's mission, *see* Am. Compl. ¶ 17, there are no allegations that Plaintiff has had to *divert* (or even otherwise spend) any of its resources to address any action that Defendants have taken with respect to the RPC. To be sure, WORC describes some of the steps it routinely takes to keep its members informed. *See id.* ¶ 19. But WORC engaged in that kind of information dissemination before the RPC was reestablished in 2017, and there are no allegations that the nature of WORC's expenditures has changed. *See id.*; *see also Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 542 (S.D.N.Y. 2006) (organization lacked standing where its "entire reason for being is to pursue the sort of advocacy . . . that it has pursued in this case").

Plaintiff's declarations tell the same story as its amended complaint. Although Ms. Kendall describes WORC's efforts to inform its members, her declaration describes an informational injury, not any diversion of WORC's resources. *See, e.g.*, Pl.'s Br., Ex. A-1 ¶ 6 ("If we have imperfect or incomplete information, we can offer our membership only incomplete updates[.]"). Although that may be sufficient to raise a challenge to the RPC's policies on meetings and materials (Count Two), it is not sufficient for Plaintiff to bring the remaining three claims.

Finally, Plaintiff alleges in the amended complaint that it has sought membership on the RPC "through one of its members[.]" Am. Compl. ¶ 66 (citing an October 2018 Federal Register entry seeking nominations for the Committee). But there has not yet been a decision on those nominations. Accordingly, to the extent Plaintiff claims it is injured from not being a *member* of the Committee, that claim is not ripe. *See United States v. Streich*, 560 F.3d 926, 932 (9th Cir. 2009) (injury not ripe where agency "has not yet made the [relevant] decision").

## B. Counts Three and Four Are Non-Justiciable.

Under the APA, courts cannot review an "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)-(2). An action is committed to agency discretion when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."

21

*Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Where that is so, the court lacks jurisdiction.  *See, e.g.*, *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 691 (9th Cir. 2003).

Counts Three and Four each raise challenges to the composition of the RPC that are non-justiciable.  Count Three alleges that the Committee is not "*fairly balanced* in terms of the points of view represented and the functions to be performed by the advisory committee."  Am. Compl. ¶ 110 (emphasis added) (quoting 5 U.S.C. App. 2 § 5(b)(2)).  And Count Four claims that the RPC lacks "appropriate provisions to assure that the advice and recommendations of the advisory committee will not be *inappropriately influenced* by the appointing authority or any *special interest*."  *Id.* ¶ 113 (emphasis added) (quoting 5 U.S.C. App. 2 § 5(b)(3)).  Because FACA provides no meaningful standards for assessing whether Defendants have complied with these provisions, the Court lacks jurisdiction over these two claims.

### 1. *Ninth Circuit Precedent Forecloses Plaintiff's § 5(b)(2) Claim.*

The Ninth Circuit has already held that FACA provides "no meaningful standards to apply" to § 5(b)(2)'s "'fairly balanced' membership requirement[.]" *Ctr. for Policy Analysis on Trade & Health (CPATH) v. Office of U.S. Trade Representative*, 540 F.3d 940, 942 (9th Cir. 2008), *as amended* (Oct. 8, 2008).  In *CPATH*, the Ninth Circuit examined the composition of Industry Trade Advisory

Committees ("ITACs"), which were required under the Trade Act to "be representative of all industry, labor, agricultural, or service interests" in "the sector or functional areas concerned." *Id.* (quoting 19 U.S.C. § 2155(c)(2)). But the court concluded that it lacked a standard to apply in determining whether viewpoints represented on the ITACs were "fairly balanced[.]" *Id.* at 945. That question was a "hopelessly manipulable" "political question that [was] best left to the other branches of government." *Id.* (citing *Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*, 886 F.2d 419, 426-30 (D.C. Cir. 1989) (Silberman, J., concurring)); *see also, e.g.*, *Doe v. Shalala*, 862 F. Supp. 1421, 1430 (D. Md. 1994).

The holding from *CPATH* forecloses Plaintiff's § 5(b)(2) claim because FACA does not provide this Court with standards to determine whether the RPC is "fairly balanced." *Compare CPATH*, 540 F.3d at 943 (recounting plaintiff's argument that ITACs lacked "any members representing the public health community"), *with* Am. Compl. ¶ 110. Plaintiff argues, however, that *CPATH* does not apply because certain Interior regulations allegedly "provide explicit and judicially manageable directions[.]" Pl.'s Br. 34. That attempt to distinguish *CPATH* fails for two reasons. First, the regulations Plaintiff invokes—from Subpart 1784 of Title 43—apply only to advisory committees within the regulatory purview of the BLM, which the RPC is not. *See infra* at 29-32. Second, even if the

23

regulations applied to the RPC, they do not "articulate what *perspectives* must be considered when determining if the advisory committee is fairly balanced"—a necessary condition to adjudicate a "fairly balanced" claim. *CPATH*, 540 F.3d at 945 (emphasis added).

Specifically, the regulations require BLM advisory committees to be "structured to provide fair membership balance, both geographic and interest-specific, in terms of the functions to be performed and points of view to be represented, as prescribed by its charter. Each shall be formed with the objective of providing representative counsel and advice about public land and resource planning, retention, management and disposal." 43 C.F.R. § 1784.2-1(a). Plaintiff attempts to parse this language, Pl.'s Br. 34-35, but the language just begs the same kind of judicially unanswerable questions at issue in *CPATH*—what does it mean to provide a "geographic and interest-specific" balance? And what perspectives count as "representative" on matters of public land and resource planning?[10] Plaintiff never attempts to provide the Court with answers.

---

[10] For instance, Plaintiff laments the lack of representation for "local landowners, conservationists, and taxpayer advocates," Pl.'s Br. 33, yet the states Plaintiff highlights are well represented on the Committee. *Compare* Pl.'s Br., Ex. A-1 ¶ 3 (noting WORC members from Colorado, Montana, North Dakota, and Wyoming), *with* Ex. C at i (reflecting RPC members from North Dakota and Wyoming, and an alternate member from Montana).

Finally, Plaintiff points to the Tenth Circuit's decision in *Colorado Environmental Coalition v. Wenker*, 353 F.3d 1221, 1234 (10th Cir. 2004) (per curiam), where the court held, in the specific context of Resource Advisory Committees ("RACs"), that a § 5(b)(2) claim is justiciable.  Plaintiff suggests that the Tenth Circuit found that the same "Department [of Interior] regulations *at issue in this case*" made such a claim justiciable. Pl.'s Br. 34 (emphasis added).  That is not true.  The Court in *Wenker* cited two principal regulations: 43 C.F.R. § 1784.2-1 and 43 C.F.R. § 1784.6-1.  But only the second of these regulations—which is not even arguably at issue here (because it applies only to RACs)—is what mattered.  As the court explained, "under § 1784.6–1(c) the court knows which categories of interests are entitled to representation on the RACs."  *Wenker*, 353 F.3d at 1233-34.  That regulation requires the membership of RACs to "be representative of the interests of the following 3 general groups," and then lays out the composition of those groups in detail.  *See* 43 C.F.R. § 1784.6-1(c).  That specificity comes far closer to identifying the "perspectives [that] must be considered" than the statutory or regulatory language at issue here.  *CPATH*, 540 F.3d at 945.  Accordingly, Plaintiff's § 5(b)(2) claim must be dismissed.

### 2.  Plaintiff's § 5(b)(3) Claim Also Is Not Justiciable.

The reasoning that led the Ninth Circuit to hold that FACA does not supply meaningful standards to evaluate "fairly balanced" claims under § 5(b)(2) compels the same result for "inappropriately influenced" claims under § 5(b)(3).  That is the conclusion the court reached in *Physicians Committee for Responsible Medicine v. Vilsack*, No. 16-CV-00069-LB, 2016 WL 5930585, at *1 (N.D. Cal. Oct. 12, 2016).

In dismissing the case "for lack of subject-matter jurisdiction," the court in *Physicians Committee* emphasized that it had "seen no definition of 'special interest[,]'" and had "seen no law describing when a participant may be held to have 'inappropriately influenced' an advisory committee."  2016 WL 5930585, at *3.  The same concerns are apparent here.  Plaintiff, for instance, never proffers a definition of "special interest" or suggests where a court might look to find one, despite characterizing the RPC as having "spent its resources fulfilling the wish list of [Defendants'] preferred special interests[.]"   Am. Compl. ¶ 99; *see also Microbiological Criteria*, 886 F.2d at 430 (Silberman, J., concurring) ("'Special interest' may do as a political perjorative . . . , but I do not see how, at least in the context of this statute, we have any way to determine what it means for purposes of judicial review.").  Plaintiff's amended complaint equally fails to suggest standards for assessing when a special interest exerts "inappropriate[] influence[]."  5 U.S.C. App. 2 § 5(b)(3).  There is no standard for this Court to determine the

point at which an "interest" represented on the RPC crosses the line from "appropriately" influencing the Committee to "inappropriately" doing so. *See Microbiological Criteria*, 886 F.2d at 431 ("[W]hat legally discernible principles could be employed to determine when a particular special interest is overly represented[?]").

Finally, to the extent Plaintiff will argue that BLM regulations contained in 43 C.F.R. § 1784.2-2 salvage the justiciability of § 5(b)(3) here, that argument is unavailing. First, those regulations apply only to advisory committees within the regulatory purview of the BLM, which the RPC is not.[11] *See infra* at 29–32. Second, although the regulations address disclosure, they do not mention "special interests" or purport to gauge the "appropriate" level of influence a special interest can exert. 43 C.F.R. § 1784.2-2. They are thus silent on the questions a court must answer in attempting to apply § 5(b)(3). In fact, the Tenth Circuit—in the same case Plaintiff cites to support its § 5(b)(2) argument—held that "§ 5(b)(3) does not provide a meaningful standard of review for a court to apply" in the specific context of a committee that *is* bound by the regulations in § 1784.2-2. *Wenker*, 353 F.3d at

---

[11] Even if the regulations applied to the RPC, they purport to regulate *members* of advisory committees, not the federal Defendants. *See* 43 C.F.R. § 1784.2-2. Plaintiff attempts to elide that distinction by asking this Court to order Defendants to "releas[e] to the public the ethics disclosures required by 43 C.F.R. § 1784.2-2." Mot. Prelim. Inj. But Defendants cannot "release" disclosures that do not exist (because Interior has never applied § 1784.2-2 to the RPC), and Plaintiff has identified no basis for seeking relief against Committee members themselves.

1231.  This Court, accordingly, should dismiss Plaintiff's § 5(b)(3) claim as non-justiciable.

## C.   The RPC Has Adhered to the Applicable Rules Governing Its Meetings and Records.

Count Two of the amended complaint charges that the RPC has been "unlawfully operat[ing] outside of the public eye."  Am. Compl. ¶ 107.  But the opposite is true.  As Plaintiff's own materials confirm, the RPC has exceeded its obligations under FACA and the GSA's implementing regulations.

Plaintiff argues in its preliminary injunction brief that the RPC has fallen short *only* with respect to its alleged obligation to provide access to meetings and materials for subcommittees and working groups.  *See* Pl.'s Br. 28-30.[12]  But that allegation is a red herring because "the requirements of [FACA] . . . do not apply to subcommittees of advisory committees that report to a parent advisory committee and not directly to a Federal officer or agency."  41 C.F.R. § 102-3.35(a).  Despite no obligation to do so, the RPC has posted notes from its subcommittee meetings on its website, *see Subcommittee Information*, Royalty

---

[12] In the amended complaint, the only allegation that addresses records of the *full* committee is the conclusory assertion that documents from a recent FOIA production contain "dozens of pages of material prepared for or by the full RPC but not otherwise released to the public."  Am. Compl. ¶ 89.  Plaintiff, however, provides no facts to support that characterization, and Plaintiff has not alleged that any full committee records will be withheld in the future.

Policy   Committee,   https://www.doi.gov/rpc/subcommittee-information   (last

vested Dec. 17, 2018), and has been receptive to requests from interested groups to

make presentations at subcommittee meetings.  *See* Letter from James Schindler to

Beth Kaeding (Dec. 12, 2018) (attached as Exhibit 5-B).  Those steps are in addition

to the full committee records the RPC posts, including comprehensive meeting

minutes, materials, and comments from the public.  *See, e.g.*, Ex. 3.

Plaintiff's attempt to portray a committee that rigorously complies with

FACA as a secretive body rests on the misapplication of certain BLM regulations.

Specifically, Plaintiff cites regulations from Subpart 1784 of Title 43.  Am. Compl.

¶ 36; Pl.'s Br. 15-16 & n.1.  But the regulations in that subpart apply only to

committees within the regulatory purview of the BLM (and appear only in the BLM

chapter of the Code of Federal Regulations).   The RPC is not one of those

committees.

First, the BLM's regulations in Subpart 1784 apply only to advisory

committees created to address "matters relating to public lands and resources under

the administrative jurisdiction of the Bureau of Land Management."  43 C.F.R.

§ 1784.0-1.  Subpart 1784 defines "[p]ublic lands" to *exclude* both "[l]ands located

on the Outer Continental Shelf ['OCS']" and "[l]ands held for the benefit of

Indians, Aleuts, and Eskimos."  43 C.F.R. § 1784.0-5(e).  Both of these excluded

categories of lands, however, are central to the RPC's work.  *See, e.g.*, 82 Fed. Reg.

16,222 (establishing that the RPC's mandate spans both "Federal *and Indian* lands" (emphasis added)); Minutes of RPC June 2018 Meeting at 2 (Pl.'s Br., Ex. F) (summarizing RPC recommendations for OCS leasing).[13]   The RPC, accordingly, was established with a mandate well outside the scope of what Subpart 1784 regulates.

Second, and consistent with the limited scope of Subpart 1784, the Federal Register notice establishing the RPC lists the relevant "Authority" as FACA, with no mention of the more specific BLM regulations that are listed for committees subject to Subpart 1784.  *Compare* 82 Fed. Reg. 16,222 (citing "5 U.S.C. Appendix 2"), *with, e.g.*, Notice of Establishment and Call for Nominations for the Bears Ears National Monument Advisory Committee, 83 Fed. Reg. 44,302 (identifying "43 CFR 1784.4-1," the regulation that governs calls for nominations for BLM advisory committees, as the relevant "Authority").   This distinction is also reflected in advisory committee charters—committees subject to Subpart 1784 generally say so in their charters; the rest of Interior's advisory committees (like the RPC) do not. *Compare, e.g.*, DOI, *Grand Staircase-Escalante National Monument Advisory*

---

[13] Plaintiff is thus wrong to suggest that the BLM "controls the resources at issue here[.]"  Pl.'s Br. 15 n.1.

*Committee Charter* ¶ 2, Sept. 6, 2018 (attached as Exhibit 6)[14] (citing Subpart 1784 for, *inter alia*, the applicable regulations on "avoidance of conflicts of interest"), *with* RPC Charter ¶ 2.

Third, the RPC is administered by ONRR (again, the Office of Natural Resources Revenue), not the BLM.  *Compare* 82 Fed. Reg. 16,222 ("AGENCY: Office of Natural Resources Revenue, Interior"), *with, e.g.*, 83 Fed. Reg. 44,302 (Aug. 30, 2018) ("AGENCY: Bureau of Land Management, Interior").  ONRR is not part of the BLM, but rather is a separate component within Interior.  And as noted previously, ONRR is the component responsible for "collection and disbursement of royalty payments" from "leasing and production of natural resources and energy from Federal and Indian lands[,] onshore and on the Outer Continental Shelf," DOI, Department Manual, 112 DM 34.1, making it the most logical component to administer the RPC.

In sum, the text of Subpart 1784, together with relevant Federal Register entries and committee charters, confirm that the RPC is not bound by the BLM-specific regulations in Subpart 1784.  *See Auer v. Robbins*, 519 U.S. 452, 461

---

[14]  The charter is also available at https://www.facadatabase.gov/FACA/apex/FACAPublicCommittee?id=a10t0000001gzpZAAQ (under the file name "16562_2018.09.14_2018 Renewal Charter_(2018-09-14-02-02-49).pdf.pdf").

(1997) (agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation" (citation omitted)).[15]

Finally, Plaintiff cites two additional inapposite authorities to claim an entitlement to records of the RPC's subcommittees and working groups.  First, Plaintiff contends that the RPC's subcommittee and working group proposals are adopted "by the parent advisory committee without further deliberations by the parent advisory committee" and therefore are still subject to GSA regulations on open meetings.  Am. Compl. ¶ 85 (quoting 41 C.F.R. § 102-3.145).  The Committee's meeting minutes refute this, *see, e.g.*, Ex. 3 at 3-20 (recounting the presentation, and ensuing discussion, of proposals at the RPC's September 2018 meeting), as do Plaintiff's own allegations, *see, e.g.*, Am. Compl. ¶ 84 (highlighting subcommittee and working group proposals that were discussed, and criticized, at meetings of the full committee).  Plaintiff may wish there was "*additional* time for the [parent] Committee to discuss" comments from the public, *id.* (emphasis added), but § 102-3.145 does not require that; it requires parent committee deliberations about subcommittee and working group proposals.  That deliberation takes place at RPC meetings.

---

[15] The Supreme Court recently agreed to hear a case challenging the application of *Auer* deference.  *See* Order, *Kisor v. Wilkie*, No. 16-1929 (U.S. Dec. 10, 2018).

Second, Plaintiff cites the Department of Interior Manual.  *See* Am. Compl. ¶ 86 (citing 308 DM 2.11 for the proposition that the RPC must make available the records of subcommittees and working groups).  "Interior's manuals," however, "do not carry the force of law and are not binding."  *Nat'l Mining Ass'n v. Zinke*, 877 F.3d 845, 871 n.27 (9th Cir. 2017).  As such, Plaintiff cannot use the Manual to bootstrap a FACA claim.

Because none of Plaintiff's allegations in support of Count Two establish a violation of FACA or regulations that apply to the RPC, the count should be dismissed.

**D.     Defendants Complied with the Provisions that Govern the Establishment of the RPC.**

Under FACA, an agency head must determine "as a matter of formal record, . . . with timely notice published in the Federal Register," that an advisory committee is "in the public interest in connection with the performance of duties imposed on that agency by law."  5 U.S.C. App. 2 § 9(a)(2).  That is precisely what the Secretary did in establishing the RPC.  *See* 82 Fed. Reg. 16,222 (certifying that "the Royalty Policy Committee is necessary, is in the public interest, and is established under the authority of the Secretary of the Interior, in support of greater transparency in creating royalty and leasing policy for mineral production on Federal and Tribal lands").  In fact, the Secretary's 2017 certification includes more

detail than did the certification for the 2004 iteration of the RPC.  *See* 69 Fed. Reg. 19,876-02.  Plaintiff claims that FACA requires an explanation as to *why* the RPC is in in the public interest, rather than a certification that it is.  Am. Compl. ¶ 104. But the statute is clear: it requires only that the Secretary "*determine*[]" that the committee to be established is "in the public interest in connection with the performance of duties imposed on that agency by law."  5 U.S.C. App. 2 § 9(a)(2) (emphasis added).

Plaintiff also posits that 41 C.F.R. § 102-3.30(a), a GSA regulation, requires written findings.  Am. Compl. ¶ 104.  Specifically, Plaintiff argues that an agency must "*explain* a '[d]etermination of need in the public interest,' including a finding that the committee is 'essential'" and that "the information to be obtained is not already available[.]"  *Id.* ¶ 32 (emphasis added) (quoting 41 C.F.R. § 102-3.30(a)). But the requirement of an explanation is nowhere in the regulation.  To the contrary, GSA requires only a "[d]etermination of need in the public interest," and unlike the determination required by FACA itself, the regulation imposes no requirement that the determination (much less any of what follows in the rest of the regulation) be published.  *Compare* 41 C.F.R. § 102-3.30(a), *with* 5 U.S.C. App. 2 § 9(a)(2) (requiring the relevant determination be made "as a matter of formal record").  Count One, therefore, fails to state a claim and should be dismissed.

## II.     Plaintiff Has Not Demonstrated Any Irreparable Harm.

"An essential prerequisite to the granting of a preliminary injunction is a showing of irreparable injury to the moving party in its absence." *Dollar Rent A Car of Wash., Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1375 (9th Cir. 1985). Plaintiff "must establish that irreparable harm is *likely,* not just possible, in order to obtain a preliminary injunction." *All. for the Wild Rockies*, 632 F.3d at 1131.

Plaintiff claims irreparable harm because of "missed opportunit[ies] for Plaintiff to protect its membership in the face of ongoing and illegal policymaking." Pl.'s Br. 35.  The problem with this theory, however, is that Plaintiff has been— and presumably will continue to be—an active participant in the Committee's policymaking.   Take, for instance, the Committee's most recent meeting on September 13, 2018, which was held after Plaintiff filed this suit but two months before Plaintiff sought a preliminary injunction.  In her declaration, Ms. Kendall (WORC's Program Director) highlights a "Notification of Permit to Drill ('NPD') proposal" as an example of the RPC's alleged "fail[ure] to take into account the value of robust public comment[.]"  Pl.'s Br., Ex. A-1 ¶ 14.  That proposal, from the RPC's Planning, Analysis and Competitiveness Subcommittee, was made public before the September 13 meeting.  *See* Planning, Analysis, & Competitiveness Recommendations at 4-7 (attached as Exhibit 4).

WORC submitted detailed comments on the NPD proposal in advance of the September meeting. *See* Ex. 3 at 79-81. Moreover, WORC also made oral comments on the NPD proposal at the meeting itself, which are reflected in the meeting minutes. *See id.* at 21-22. Ultimately, the NPD recommendations were *not* adopted and were instead "referred back to the subcommittee." *Id.* at 9. One Committee member even highlighted "concerns" raised by "[o]ne member of the public this morning" about the proposal. *Id.* In other words, this is an example of the policymaking process that WORC claims to want: The public criticized the policy WORC disfavored, the RPC considered those criticisms, and the RPC decided not to adopt the criticized recommendation.

There is no irreparable harm in a FACA case where, as here, "Defendants' disclosures . . . are sufficient for the public and Plaintiff to engage in an informed debate regarding the activities of the [Committee.]" *Lawyers' Comm. for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity*, 265 F. Supp. 3d 54, 59 (D.D.C. 2017). To be sure, Plaintiff—like any member of the public—may want to be *more* influential in the process of generating recommendations. But the impairment of Plaintiff's interests must be "both 'certain and great'" in order to qualify as "irreparable[.]" *Id.* at 70. And here, there are many opportunities for WORC and its members to make their voices heard, such as through written comments, oral comments, and presentations to

36

subcommittees. *See* Ex. 3; *see also* Ex. 5-B. Moreover, any RPC recommendation that requires notice and *comment* would provide an additional avenue for Plaintiff to advance its views. *Cf. Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1026 (D.C. Cir. 1998) ("[T]he district court should determine whether the subsequent opportunity" to comment on an agency decision "will render harmless (or at least less harmful) the loss of any past opportunity to participate."); *id.* at 1026 n.8. Plaintiff claims that policy recommendations themselves are "injurious," Pl.'s Br. 37, but Plaintiff never identifies a specific policy injury that is "likely to occur" absent an injunction. *All. for the Wild Rockies*, 632 F.3d at 1131.

Plaintiff has thus failed to demonstrate irreparable harm, and the Court can deny the preliminary injunction on that basis alone. *See Drakes Bay Oyster Co.*, 747 F.3d at 1092.

## III. The Balance of Equities and Public Interest Strongly Favor Defendants.

The remaining preliminary injunction factors provide an independent basis for denying Plaintiff's request for a preliminary injunction. "The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 420 (2009). As the Supreme Court has cautioned, "courts of equity should pay particular regard for

the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citation omitted).

Plaintiff asks this Court to stop the RPC in its tracks, even though the Committee provides Plaintiff and the public with detailed information on the policies it is considering. Moreover, Plaintiff waited months to file this motion, one effect of which is that the requested injunction would impose financial and logistical costs on members and officials who have made plans for the Committee's January 31, 2019 meeting and who have invested substantial time in the Committee's work. Worse, those costs would also fall on members of the public who have been participating in the Committee's work and likewise planned to contribute to January's meeting. More broadly, Plaintiff's requested injunction would impair the Committee's ability to continue to work on issues that all parties agree are important to "the public interest." 82 Fed. Reg. 16,222. That harm, weighed against Plaintiff's unfounded concerns about its access to the policymaking process, tips the equities decidedly in Defendants' favor.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the amended complaint and deny Plaintiff's motion for preliminary injunction.

Dated: December 17, 2018                    Respectfully submitted,

JOSEPH H. Hunt
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Michael H. Baer*
MICHAEL H. BAER
Trial Attorney
U.S. Department of Justice,
Civil Division, Federal Programs Branch

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I certify that this brief contains 8,998 words. I relied on the word count function in Microsoft Word, which was used to prepare this document.

*/s/ Michael H. Baer*
Michael H. Baer