Randy J. Tanner
BOONE KARLBERG P.C.
201 West Main, Suite 300
P. O. Box 9199
Missoula, MT  59807-9199
Phone:  (406) 543-6646
Fax:      (406) 549-6804
rtanner@boonekarlberg.com

Travis Annatoyn
Democracy Forward Foundation
1333 H. St. NW
Washington, D.C. 20005
Phone:  (202) 601-2483
tannatoyn@democracyforward.org

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS,<br><br>Plaintiff,<br><br>vs.<br><br>RYAN ZINKE, in his official capacity as Secretary of the Interior, SCOTT ANGELLE, in his official capacity as Director of the Bureau of Safety & Environmental Enforcement, DEPARTMENT OF THE INTERIOR, BUREAU OF LAND MANAGEMENT, and BRIAN STEED, in his official capacity as Deputy Director of Policy and Programs for the Bureau of Land Management,<br><br>Defendants. | Cause No. CV-18-139-M-DWM<br><br><br><br>CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION |

# **TABLE OF CONTENTS**

**Page**

Table of Contents………………………………………………………………… i

Table of Authorities……………………………………………………………… iii

Exhibit Index ………………………………………………….…………..………… x

Introduction ………………………………………………………….......…... 1

Argument …………………………………………………….....…………... 2

    I.  Plaintiff Has Standing …………………………….....…………….……... 2

        A. Injuries To The Western Organization Of Resource Councils ….. 3

            i.  Procedural Injuries Under FACA ...………...…….…..…... 3

           ii.  Procedural Injuries Under Defendants' Regulations .......... 6

          iii.  Injuries To Plaintiff's Operations ...………..……………... 7

        B. Injuries To Plaintiff's Members ……………………………….10

    II.  Plaintiff's Claims Are Justiciable …………………………………... 14

        A. The "Inappropriate Influence" Requirements Of Section 5(b)(3) And Department Regulations Are Not Committed To Agency Discretion …………......................................................……15

        B. The "Fairly Balanced" Requirement of Section 5(b)(2) And Department Regulations Is Not Wholly Committed To Agency Discretion……………………………………………………...20

    III. Plaintiff Has Stated Valid Claims For Relief And Is Likely To Prevail On The Merits Of Those Claims ……………………………... 22

        A. Defendants Have Unlawfully Shielded Committee Meetings And Records From Public Scrutiny ……………………………… 23

i

B. Defendants' Public Interest Finding Is Arbitrary and
Capricious ………………………………………………… 26

IV.    Plaintiff And Its Members Are Irreparably Harmed By the RPC ..... 28

V.    The Public Interest And Equities Overwhelmingly Favor Relief …. 29

Conclusion ………………………………………………………..……… 31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Action All. of Senior Citizens of Greater Phila. v. Heckler</u>,
789 F.2d 931 (D.C. Cir. 1986) ..................................................................6

<u>Airline Serv. Providers Ass'n v. L.A. World Airports</u>,
873 F.3d 1074 (9th Cir. 2017) .............................................................10

<u>All. for the Wild Rockies v. Cottrell</u>,
632 F.3d 1127 (9th Cir. 2011) ..............................................................28

<u>Am. Fed'n of Gov't Emps. Local 1 v. Stone</u>,
502 F.3d 1027 (9th Cir. 2007) ................................................................3

<u>Amerijet Int'l, Inc. v. Pistole</u>,
753 F.3d 1343 (D.C. Cir. 2014) ..........................................................26

<u>Arc of Cal. v. Douglas</u>,
757 F.3d 975 (9th Cir. 2014) ...............................................................30

<u>Ass'n of Irritated Residents v. EPA</u>,
790 F.3d 934 (9th Cir. 2015) ...............................................................17

<u>ASSE Int'l v. Kerry</u>,
803 F.3d 1059 (9th Cir. 2015) ....................................................15, 22

<u>Auer v. Robbins</u>,
519 U.S. 452 (1997)..............................................................................20

<u>B.Y.O.B., Inc. v. Montana</u>,
No. CV 15-36-M-DWM, 2015 WL 5671182 (D. Mont. Sept. 25,
2015) ......................................................................................................22

<u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544 (2007)..............................................................................24

<u>Cargill v. United States</u>,
173 F.3d 323 (5th Cir. 1999) ......................................................5, 8, 16

Citizens to Preserve Overton Park v. Volpe,
    401 U.S. 402 (1971)................................................................14

Colo. Entl. Coal. of v. Wenker,
    353 F.3d 1221 (10th Cir. 2004) ............................................16, 19, 21

Conservation Law Found. of New Eng. v. Sec'y of the Interior,
    864 F.2d 954 (1st Cir. 1989)..................................................17

Crown Pac. v. Occupational Safety & Health Rev. Comm'n,
    197 F.3d 1036 (9th Cir. 1999) ...............................................20

Ctr. for Food Safety v. Vilsack,
    636 F.3d 1166 (9th Cir. 2011) ...............................................29

Ctr. for Pol'y Analysis on Trade & Health v. U.S. Trade Rep.
    540 F.3d 940 (9th Cir. 2008) .............................................20, 21

Cummock v. Gore,
    180 F.3d (D.C. Cir. 1999).......................................................7

Defs. of Wildlife v. Gould,
    No. 08-cv-56-M-DWM, 2009 WL 10678818 (D. Mont. Feb. 17,
    2009) ......................................................................................17

Defs. of Wildlife v. Zinke,
    856 F.3d 1248 (9th Cir. 2017) ...............................................26

Drakes Bay Oyster Co. v. Jewell,
    747 F.3d 1073 (9th Cir. 2014) ...............................................17

Fair Hous. Council of San Fernando Valley v. Roommate.com,
    666 F.3d 1216 (9th Cir. 2012) .................................................7

Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.,
    528 U.S. 167 (2000).................................................................10

Friends of Santa Clara River v. U.S. Army Corps of Engineers,
    887 F.3d 906 (9th Cir. 2018) ...................................................5

Gutierrez de Martinez v. Lamagno,
    515 U.S. 417 (1995)................................................................14

iv

Havasupai Tribe v. Provencio,
   906 F.3d 1155 (9th Cir. 2018) ...........................................................12

Hyatt v. Off. of Mgmt. & Budget,
   908 F.3d 1165 (9th Cir. 2018) ...........................................................14

Wilderness Soc'y Inc. v. Rey,
   622 F.3d 1251 (9th Cir. 2010) .......................................................6, 12

La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,
   624 F.3d 1083 (9th Cir. 2010) .............................................................2

Lawyers' Comm. for C.R. Under Law v. Presidential Advisory
   Comm'n on Election Integrity,
   265 F. Supp. 3d 54 (D.D.C. 2017)......................................................25

Lujan v. Defs. Of Wildlife,
   504 U.S. 555 (1992)..............................................................................2

Mach Mining, LLC v. E.E.O.C.,
   135 S. Ct. 1645 (2015)...................................................................14, 15

Maya v. Centex Corp.,
   658 F.3d 1060 (9th Cir. 2011) .............................................................2

McMaster v. United States,
   731 F.3d 881 (9th Cir. 2013) .............................................................23

Mont. Envtl. Info. Ctr. v. Off. of Surface Mining,
   274 F. Supp. 3d 1074 (D. Mont. 2017)...............................................11

Mont. Envtl. Info. Ctr. v. Stone-Manning,
   766 F.3d 1184 (9th Cir. 2014) .............................................................9

Moore v. Apfel,
   216 F.3d 864 (9th Cir. 2000) .............................................................23

Munoz v. Mabus,
   630 F.3d 856 (9th Cir. 2010) .............................................................19

Muransky v. Godiva Chocolatier,
   905 F.3d 1200 (11th Cir. 2018) ...........................................................7

N. Plains Res. Council Inc. v. BLM,
    No. 14-cv-60-BLG-SPW, 2016 WL 1270983 (D. Mont. Mar. 31,
    2016) ....................................................................................................11

Nat. Res. Def. Council v. Abraham,
    223 F. Supp. 2d 162 (D.D.C. 2002)....................................................13

Nat. Res. Def. Council v. Houston,
    146 F.3d 1118 (9th Cir. 1998) ............................................................10

Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector
    Survey on Cost Control,
    711 F.2d 1071 (D.C. Cir. 1983) .......................................................5, 8

Nat'l Educ. Ass'n, v. Devos,
    No. 18-cv-05173-LB, 2018 WL 6609575 (N.D. Cal. Dec. 17,
    2018) ......................................................................................................6

Nat'l Mining Ass'n v. Zinke,
    877 F.3d 845 (9th Cir. 2017) ..............................................................23

Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.,
    886 F.3d 803 (9th Cir. 2018) ..............................................................28

Nw. Ecosystem All. v. Off. of the U.S. Trade Rep.,
    No. 99-cv-1165, 1999 WL 33526001 (W.D. Wash. Nov. 9, 1999) ....8

Padula v. Webster,
    822 F.2d 97 (D.C. Cir. 1987)..............................................................22

Pebble Ltd. P'ship v. EPA,
    No. 3:14-cv-0171, ECF No. 90 (D. Alaska Nov. 25, 2014)...............13

Physicians Comm. for Responsible Medicine v. Vilsack,
    No. 16-cv-69, 2016 WL 5930585 (N.D. Cal. Oct. 12, 2016)............16

Pinnacle Armor v. United States,
    648 F.3d 708 (9th Cir. 2011) ..............................................................15

Planned Parenthood of N.Y.C. v. HHS,
    No. 18-cv-5680, --- F. Supp. 3d ----, 2018 WL 4168977 (S.D.N.Y.
    Aug. 30, 2018) .....................................................................................16

Powder River Basin Res. Council v. Jewell,
    No. 14-CV-97-ABJ, 2018 WL 6419448 (D. Wyo. Dec. 6, 2018)......................11

Price v. Stevedoring Servs. of Am.,
    697 F.3d 820 (9th Cir. 2012) ...........................................................................20

Pub. Citizen v. Dep't of Justice,
    491 U.S. 440 (1989)...............................................................................4, 5, 16

Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for
    Foods,
    886 F.2d 419 (D.C. Cir. 1989).....................................................................8, 9, 16

Robins v. Spokeo, Inc.,
    867 F.3d 1108 (9th Cir. 2017) ....................................................................4, 5, 6

Rocky Mountain Wild v. FWS,
    No. CV 13–42–M–DWM, 2014 WL 7176384 (D. Mont. Sept. 29,
    2014) ................................................................................................................21

Salmon Spawning & Recovery All. v. Gutierrez,
    545 F.3d 1220 (9th Cir. 2008) .........................................................................12

Spokeo, Inc. v. Robins,
    136 S. Ct. 1540 (2016)........................................................................4, 5, 7, 12

Town of Chester v. Laroe Est.,
    137 S. Ct. 1645 (2017)........................................................................................2

Turlock Irrigation Dist. v. FERC,
    903 F.3d 862 (9th Cir. 2018) ...........................................................................27

U.S. Army Corps of Eng'rs v. Hawkes Co.,
    136 S. Ct. 1807 (2016).......................................................................................25

United States v. Fausto,
    484 U.S. 439 (1988)...........................................................................................23

Van Patten v. Vertical Fitness Grp., LLC,
    847 F.3d 1037 (9th Cir. 2017) .......................................................................4, 6

Wash. All. of Tech. Workers v. Dep't of Homeland Sec.,
    892 F.3d 332 (D.C. Cir. 2018)...........................................................................28

Webster v. Doe,
    486 U.S. 592 (1988) ............................................................................. 16

Weyerhaeuser Co. v. FWS,
    139 S. Ct. 361 (2018) ................................................................ 14, 15, 21

WildEarth Guardians v. BLM,
    870 F.3d 1222 (10th Cir. 2017) .......................................................... 11

Wilson v. Odwalla,
    No. 17-2763 DSF, 2018 WL 3830119 (C.D. Cal. July 30, 2018) ...................... 24

**Statutes**

5 U.S.C. app. II § 9 .......................................................................... 26, 27

5 U.S.C. § 706 .................................................................................. 15, 28

**Other Authorities**

41 C.F.R. pt. 102-3, subpt. B, app. A .................................................... 21

41 C.F.R.

    § 102-3.5 .......................................................................................... 27

    § 102-3.30 ................................................................................... 26, 27

    § 102-3.60 ......................................................................................... 27

    § 102-3.145 ...................................................................................... 24

43 C.F.R.

    § 1784.0-1 ................................................................................... 18, 20

    § 1784.0-5 ....................................................................................... 19

    § 1784.0-2 ........................................................................................ 18

    § 1784.2-1 ................................................................................... 20, 21

    § 1784.2-2 ............................................................................. 6, 17, 20

    § 1784.6-1 ....................................................................................... 21

Bureau of Land Mgmt., <u>What We Manage</u>,
    https://www.blm.gov/about/what-we-manage/national......................................18

H.R. Rep. No. 92-1017 (1972)............................................................................4, 16

Wild Horse and Burro Advisory Board Meeting, 83 Fed. Reg. 10874
    (March 13, 2018) ...............................................................................................19

## <u>EXHIBIT INDEX</u>

**Exhibit**

Recommendations from the Onshore Working Group to the Planning, Analysis, and Competitiveness Subcommittee for the February 2018 Royalty Policy Committee Meeting …………………………………………... A

Department Manual Part 11 Chapter 1 ………………………………………... B

Excerpts from Freedom of Information Act Response …………………………... C

Department Manual Part 308 Chapter 8 …………………………………………. D

Lawyers' Comm. for C.R. Under Law v. Presidential Advisory Comm'n on Election Integrity, Civ. No. 17-1354 (CKK), ECF No. 28 (D.D.C. Aug. 30, 2017) ……………………………………………………...…………………… E

## INTRODUCTION

Plaintiff's Amended Complaint ("Complaint") and motion for preliminary relief seek only what Congress has required under the Federal Advisory Committee Act ("FACA") and Defendants themselves have promised in the way of Royalty Policy Committee ("RPC" or "Committee") management: an advisory committee that is open, free from conflicts of interest, and inclusive of at least one *bona fide* conservation advocate.  But as Defendants' memorandum confirms, they cannot abide these baseline gestures towards open and representative decisionmaking.

Instead, they attempt to explain away FACA and its regulations, contending in one argument after another that Congress and the Department of Interior somehow placed the Executive's outsourcing of federal royalty policy beyond all review.  These arguments misapprehend both Congress (which does not give agencies *carte blanche* to implement federal law) and the federal courts (which are perfectly capable of policing the non-ministerial agency actions associated with the RPC).  The Court should reject Defendants' efforts to exclude the public from public policy, deny their motion to dismiss, and – because Defendants largely do not contest the merits of Plaintiff's claims – grant the Western Organization of Resource Councils' ("WORC's") motion for preliminary relief.

//

//

1

# ARGUMENT

## I.    Plaintiff Has Standing

The tripartite test for Article III standing "serves to prevent the judicial process from being used to usurp the powers of the political branches … by requiring plaintiffs to allege such a personal stake in the outcome of the controversy as to justify the exercise of the court's remedial powers on their behalf." Town of Chester v. Laroe Est., 137 S. Ct. 1645, 1650 (2017) (citations omitted).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to demonstrate standing, "for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defs. Of Wildlife, 504 U.S. 555, 561 (1992) (citation omitted).   Here, Plaintiff's Complaint and supporting declarations contain far more than general factual allegations that Plaintiff and its membership – bodies with day-to-day interests in the government's regulation of public resources – possess a personal stake in Defendants' unlawful attempts to dispose of those resources.[1]

---

[1] Defendants contend that the declarations are beyond the Court's review.  See ECF No. 25 ("Defs.' Br.") 13 n.5 (citing La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1088 (9th Cir. 2010)).  Although that may be true when a plaintiff seeks to "rais[e] a new theory of standing in its response to a motion for summary judgment," Lake Forest, 624 F.3d at 1088-89, WORC has submitted declarations contemporaneously with its pleadings to substantiate already-pleaded standing theories.  Thus, "it is within the trial court's power to allow … the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) (quoting Warth v. Seldon, 422 U.S. 490, 501 (1975)).

## A. Injuries To The Western Organization Of Resource Councils

Defendants concede that Plaintiff has organizational standing to pursue its claim for disclosure of RPC materials, Defs.' Br. 13 n.6, and Plaintiff has demonstrated organizational standing for its remaining three claims, which concern the establishment of the RPC, its unfairly balanced membership, and its exposure to inappropriate influence from special interests.  "[A]n organization 'may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.' The question is simply whether the organization satisfies the usual requirements for standing." Am. Fed'n of Gov't Emps. Local 1 v. Stone, 502 F.3d 1027, 1032 (9th Cir. 2007) (quoting Warth, 422 U.S. at 511).  The government does not contest causation or redressability, and argues only that WORC's injuries are insufficiently concrete for purposes of Article III.  But Plaintiff has suffered three injuries sufficient for standing: procedural injuries under FACA, informational injuries under FACA's implementing regulations, and injuries to WORC's ability to function as an organization.

### i.  Procedural Injuries Under FACA

"[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact.  In other words, a plaintiff in such a

--------

case need not allege any *additional* harm beyond the one Congress has identified."
Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016), as revised (May 24, 2016)
("Spokeo I").  The Ninth Circuit recognizes procedural injuries sufficient for
standing by asking "(1) whether the statutory provisions at issue were established
to protect [plaintiff's] concrete interests … , and if so, (2) whether the specific
procedural violations alleged … actually harm, or present a material risk of harm
to, such interests."  Robins v. Spokeo, Inc., 867 F.3d 1108, 1113 (9th Cir. 2017)
("Spokeo II").  This "softened" inquiry, Friends of Santa Clara River v. U.S. Army
Corps of Engineers, 887 F.3d 906, 918 (9th Cir. 2018), requires some "defer[ence]
… to Congress's judgment, 'because Congress is well positioned to identify
intangible harms that meet minimum Article III requirements.'"  Van Patten v.
Vertical Fitness Grp., LLC, 847 F.3d 1037, 1043 (9th Cir. 2017) (quoting Spokeo
I, 136 S. Ct. at 1549).

     The Supreme Court has already cited injuries under FACA as the type that
Congress has "identif[ied] and elevat[ed]" as sufficiently concrete under Article
III.  Spokeo I, 136 S. Ct. at 1549-50 (citing Pub. Citizen v. Dep't of Justice, 491
U.S. 440, 449 (1989)).  In any event, Plaintiff has adequately alleged that Congress
enacted FACA to protect WORC's interests, since the Act was designed to ensure
that points of view disfavored by government decisionmakers, such as Plaintiff's,
would not be not shut out of advisory committees.  H.R. Rep. No. 92-1017, at

3495-96 (1972).  The statute therefore creates rights to a committee free from undue influence by special interests, Cargill v. United States, 173 F.3d 323, 338-39 (5th Cir. 1999), to public information, Pub. Citizen, 491 U.S. at 449-53, and to fairly balanced membership, Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control, 711 F.2d 1071, 1074 n.2 (D.C. Cir. 1983).  As these cases recognize, Congress saw FACA's procedural protections as "'real,' rather than purely legal creations," Spokeo II, 867 F.3d at 1114 (citation omitted), and failures to comply with FACA as more than "bare procedural violation[s]."  Spokeo I, 136 S. Ct. at 1549 (citing Summers v. Earth Island Inst., 555 U.S. 488, 496 (2009)).

Plaintiff has also alleged that Defendants' violations of FACA present a material risk of harm to WORC's interests.  In its first claim for relief, Plaintiff alleges that Defendants' pro forma compliance with FACA's chartering requirements has created an illegal advisory committee that now drives policy directly related to Plaintiff's mission.  ECF No. 14 ("Compl.") ¶¶ 49-56, 103-05.  And in its third and fourth claims for relief, Plaintiff alleges that Defendants have excluded Plaintiff's point of view in favor of extractive interests by ignoring Congress' requirements for committee composition.  Compl. ¶¶ 57-74, 109-14.  As these allegations make plain, "[i]t does not take much imagination" to understand how an organization dedicated to sustainable royalty policies could be injured by

Case 9:18-cv-00139-DWM   Document 31   Filed 12/31/18   Page 17 of 42

an illegal committee constituted to secretly abandon and undo those policies.

Spokeo II, 867 F.3d at 1117. Because these injuries are "directly and substantially

related to [FACA's] goals," WORC has suffered procedural injuries sufficient to

confer standing. Id. See Van Patten, 847 F.3d at 1043.

### ii. Procedural Injuries Under Defendants' Regulations

Plaintiff also has standing to pursue its fourth claim for relief because

Defendants have illegally withheld information guaranteed by regulation and

useful to WORC's operations. Action All. of Senior Citizens of Greater Phila. v.

Heckler, 789 F.2d 931, 937 (D.C. Cir. 1986). Defendants must compile and

release ethics disclosures for each of the RPC's members, 43 C.F.R. § 1784.2-

2(a), (c), but have not even collected the disclosures. Defs.' Br. 27 n.11. Plaintiff

is therefore deprived of information that it would use to better understand and

respond to the RPC's composition and proceedings, and to update its membership.

ECF No. 18-1, Ex. A-1 ("Kendall Dec.") ¶¶ 28-30; Compl. ¶¶ 19-20.[2] This

withholding constitutes an Article III injury in fact. See Nat'l Educ. Ass'n, v.

Devos, No. 18-cv-05173-LB, 2018 WL 6609575, at *10 (N.D. Cal. Dec. 17, 2018).

//

---

[2] While Plaintiff disputes Defendants' contention that an informational injury always requires a predicate request for and denial of information, see Wilderness Soc'y, Inc. v. Rey, 622 F.3d 1251, 1258 (9th Cir. 2010), Defendants apparently concede that Plaintiff has demonstrated such an injury under any standard. Defs.' Br. 13 n.6.

### iii.  Injuries To Plaintiff's Operations

Once a plaintiff has identified a procedural injury sufficient for standing, it need not allege additional injuries.  Spokeo I, 136 S. Ct. at 1549.  But Plaintiff has demonstrated "additional burden[s]" from the RPC that are themselves sufficient to confer standing for Plaintiff's third and fourth claims for relief.  Muransky v. Godiva Chocolatier, 905 F.3d 1200, 1211 (11th Cir. 2018).[3]  Specifically, Plaintiff has demonstrated that Defendants' violations of FACA Section 5 "impair [WORC's] ability to function as an organization."  Fair Hous. Council of San Fernando Valley v. Roommate.com, 666 F.3d 1216, 1224-25 (9th Cir. 2012) (difficulty "recruiting members, obtaining funding, or collecting dues clearly hinders [an] organization's ability to function, and is an injury for purposes of standing").

Defendants have disrupted Plaintiff's operations by denying WORC and likeminded representatives even a single seat on the Committee.  Advisory committee membership confers rights beyond those enjoyed by the public, including the right to "fully participate in the work of the committee to which [an applicant] is appointed," and a "greater" right to committee materials.  Cummock

---

[3] Defendants' reliance on Summers is thus misplaced for two reasons. First, as Spokeo has since explained, Congress can define procedural rights that are, by themselves, sufficiently concrete under Article III, such as those prescribed by FACA.  Second, the government's procedural violations are tethered to concrete interests of the type contemplated by Summers i.e., WORC's organizational capacity and its members' interests in particular lands.  555 U.S. at 496-97.

v. Gore, 180 F.3d 282, 291-92 (D.C. Cir. 1999). Thus, "persons having a direct interest in the committee's purpose" – including organizations "that [have] sought and [were] denied representation on the [committee]" – suffer an injury in fact when the government ignores the "fairly balanced" requirement of Section 5(b)(2) and withholds rights attendant to committee membership. Nat'l Anti-Hunger Coal., 711 F.2d at 1074 n.2; see also Nw. Ecosystem All. v. Off. of the U.S. Trade Rep., No. 99-cv-1165, 1999 WL 33526001, at *3 (W.D. Wash. Nov. 9, 1999). Similar injuries arise when the committee's lack of balance flows from the undue influence of special interests, in violation of FACA Section 5 and Department regulations. Cargill, 173 F.3d at 338-39; Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods, 886 F.2d 419, 425 (D.C. Cir. 1989) (Friedman, J.); id. at 432-34 (Edwards, J.).

Plaintiff's Complaint and declarations demonstrate that its point of view (*i.e.*, that royalty policy should consider the interests of local landowners and taxpayers) was excluded from Committee membership when Defendants (1) failed to appoint Plaintiff's representative to the Committee; (2) failed to appoint any similar representatives to the Committee, and; (3) instead staffed the Committee with representatives of one special interest. These actions and omissions impaired Plaintiff's functions by depriving WORC of the unique rights to information enjoyed by Committee members, which Plaintiff would use to provide accurate

8

updates to its membership, Compl. ¶¶ 19-20; Kendall Dec. ¶¶ 28-30, and by

robbing Plaintiff of participatory rights in Committee and subcommittee

proceedings, which it would use to advocate for policies helpful to Plaintiff's

membership (such as increasing the size of reclamation bonds or curbing waste

from natural gas), Kendall Decl. ¶¶ 20-27; Compl. ¶¶ 99-100, or to better thwart

RPC policies that will injure both that membership and WORC itself, such as the

reworking of standards under the National Environmental Policy Act ("NEPA"),

Compl. ¶¶ 91-98; ECF No. 18-1, Ex. A-2 ("Kaeding Decl.") ¶¶ 15-25; Kendal

Decl. ¶¶ 14-15.

Defendants contend that these injuries are unripe because Defendants have

not yet denied Plaintiff's application for membership.  Defs' Br. 20.  But agency

policy is ripe where it is "nearly certain" that the government will rely on that

policy to deny a plaintiff's administrative request.  Mont. Envtl. Info. Ctr. v. Stone-

Manning, 766 F.3d 1184, 1191 (9th Cir. 2014).  Given the RPC's lopsided

composition and Defendants' refusal to permit Plaintiff even rudimentary access to

Committee proceedings, see infra at 23, it is inevitable that the government will

deny Plaintiff's application.  More to the point, Defendants' argument mistakes the

nature of Plaintiff's rights under FACA, which is to an RPC with *some*

representation of an essential point of view, not necessarily to its chosen

representative.  Microbiological Criteria, 886 F.2d at 434-35.  While Plaintiff's

nomination most clearly reflects its interest in Committee proceedings and will most obviously injure Plaintiff when rejected, WORC's injury was ripe when Defendants constituted the RPC without a representative of landowner interests. See Nat. Res. Def. Council v. Houston, 146 F.3d 1118, 1131 (9th Cir. 1998) ("Where the Bureau is not complying with [a statute] and its obligation to comply with [the statute] is in dispute, a determination of the … issue is ripe.").

### B. Injuries To Plaintiff's Members

An organization has standing to sue on behalf of its members if "(1) its individual members would have standing in their own right, (2) the interests at stake in the litigation are germane to the organization's purposes, and (3) the case may be litigated without participation by individual members of the association." Airline Serv. Providers Ass'n v. L.A. World Airports, 873 F.3d 1074, 1078 (9th Cir. 2017).  For its first, third, and fourth claims for relief, Plaintiff has demonstrated standing to sue on behalf of two members who "aver that they use the … area" affected by the RPC's policy recommendations and are "persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity."  Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 183 (2000) (citation omitted).  Specifically, Plaintiff's declarations demonstrate that its members are injured by policies encouraging the irresponsible leasing of public minerals nearby their properties, *and* by the RPC's failure to

10

consider policies that would ameliorate localized environmental destruction.  See ECF No. 18-2, Ex. B-2 ("Turner Decl.") ¶¶ 4-10, 13-15 (injuries from mining in Powder River Basin); ECF No. 18-2, Ex. B-2 ("Pfister Decl.") ¶¶ 8-20 (same, from Bull Mountain Mine).

Defendants attempt to downplay these injuries by claiming that federal leasing policy – including the NEPA policies so central to the RPC – somehow has no relationship to *federal leases* at Bull Mountain and in the Powder River Basin. Defs.' Br. 15-16.  That argument may surprise this Court, which has spent years resolving claims that ongoing federal leasing policy, particularly NEPA policy, has improperly permitted modifications to Bull Mountain.  See Mont. Envtl. Info. Ctr. v. Off. of Surface Mining, 274 F. Supp. 3d 1074 (D. Mont. 2017); N. Plains Res. Council Inc. v. BLM, No. 14-cv-60-BLG-SPW, 2016 WL 1270983 (D. Mont. Mar. 31, 2016).  Cases in the Tenth Circuit tell a similar tale for the leasing described in Mr. Turner's declaration.  WildEarth Guardians v. BLM, 870 F.3d 1222, 1227 (10th Cir. 2017); Powder River Basin Res. Council v. Jewell, No. 14-CV-97-ABJ, 2018 WL 6419448, at *1 (D. Wyo. Dec. 6, 2018).  And to the extent Defendants (inaccurately) protest that the declarants raise only past leasing activity, Defs' Br. 17, Defendants nowhere disclaim continued discretion and control over future leasing activity in areas of value to WORC members, nor could they.  Indeed, the

RPC has specifically called for slashing NEPA reviews in the Powder River Basin. Ex. A at 3-4.

Equally unpersuasive is Defendants' complaint that Plaintiff's members' injuries are "generalized." Defs.' Br. 17 . Plaintiff's declarations describe injuries at the level of individual rock formations and grazing allotments. See, e.g., Turner Decl. ¶¶ 7-9; Pfister Decl. ¶ 10. And Plaintiff has described specific policies that would render leasing in the Powder River Basin and in eastern Montana less attractive, and that would begin to repair associated environmental damage. Compl. ¶ 99; Kendall Decl. ¶¶ 14-24. See Havasupai Tribe v. Provencio, 906 F.3d 1155, 1162 n.3 (9th Cir. 2018) (recognizing concrete injury from "continued mining"); accord Rey, 622 F.3d at 1257 (no standing where plaintiff's members lacked *any* personal interest in the project area). Insofar as other landowners could articulate similar injuries and therefore possess standing to sue, that is no obstacle to the Court's jurisdiction: "[t]he fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance." Spokeo I, 136 S. Ct. at 1548 n.7.

Finally, Defendants protest that Plaintiff's members' injuries are not traceable to Defendants or redressable because the Department itself must act in order to imbue RPC recommendations with the force of law. But plaintiffs "alleging a procedural injury 'must [only] show that they have a procedural right

12

that, if exercised, *could* protect their concrete interests," a standard that is "not a high bar to meet.'" Salmon Spawning & Recovery All. v. Gutierrez, 545 F.3d 1220, 1226 (9th Cir. 2008) (citation omitted).  Plaintiff has cleared that bar because it has alleged that the Committee, if differently composed or more open to public participation, *could* lead to improved recommendations and outcomes—a point Defendants implicitly acknowledge.  See Pfister Decl. ¶¶ 23-29; Turner Decl. ¶¶ 11-15; Kendal Decl. ¶¶ 17, 21, 26-30; Compl. ¶¶ 21-22, 26-27, 99-100; Defs' Br. 19 ("Changing the procedures that affect the RPC could directly affect … what the RPC recommends.").

Indeed, Defendants do not contest that they have occasionally ratified RPC recommendations on the same day as the Committee's vote, ECF No. 18 ("Pl.'s Br.") 26; Compl. ¶ 98, forgoing public process and belying the government's claim that "[t]he question of what policy Interior ultimately adopts" is "speculat[ive]" and "separate" from the RPC's operations.  Defs.' Br. 19.   In these instances – where "plaintiffs … clearly demonstrate[] the significance" of committee work on agency policy – courts have no difficulty redressing injuries of FACA plaintiffs. Nat. Res. Def. Council v. Abraham, 223 F. Supp. 2d 162, 182–84 (D.D.C. 2002), order set aside in part on other grounds sub nom. Nat. Res. Def. Council v. Dep't of Energy, 353 F.3d 40 (D.C. Cir. 2004); see also Pebble Ltd. P'ship v. EPA, No. 3:14-cv-0171, ECF No. 90 at 2 (D. Alaska Nov. 25, 2014).

## II.     Plaintiff's Claims Are Justiciable

Defendants' justiciability arguments conspicuously omit the guiding

principle of that inquiry, *i.e.*, the "strong presumption that Congress intends

judicial review of administrative action." Hyatt v. Off. of Mgmt. & Budget, 908

F.3d 1165, 1170–71 (9th Cir. 2018) (quotation omitted).  Exceptions to the

presumption are "very narrow," applicable only "in those rare instances where

statutes are drawn in such broad terms that in a given case there is no law to

apply." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410 (1971)

(quotation omitted).  Defendants therefore bear a "heavy burden in attempting to

show that Congress prohibited all judicial review of the agency's compliance with

a legislative mandate." Mach Mining, LLC v. E.E.O.C., 135 S. Ct. 1645, 1651

(2015) (quotation omitted).  When in doubt, courts "adopt[] the reading that

accords with traditional understandings and basic principles: that executive

determinations generally are subject to judicial review." Gutierrez de Martinez v.

Lamagno, 515 U.S. 417, 434 (1995).  See also Weyerhaeuser Co. v. FWS, 139 S.

Ct. 361, 370 (2018) ("[t]he few cases in which we have applied the … exception

involved agency decisions that courts have traditionally regarded as unreviewable,

such as the allocation of funds from a lump-sum appropriation or a decision not to

reconsider a final action") (citations omitted).

14

Under this presumption, "the mere fact that a statute contains discretionary language does not make agency action unreviewable." Pinnacle Armor v. United States, 648 F.3d 708, 719 (9th Cir. 2011) (quotation omitted). To the contrary, Congress has explicitly directed courts to "set aside any agency action that is … an abuse of discretion," 5 U.S.C. § 706(2)(A), a task that would be impossible "if all matters committed to agency discretion were unreviewable." Weyerhaeuser, 139 S. Ct. at 370. See Mach Mining, 135 S. Ct. at 1652 (government's "broad leeway" and "wide latitude" does not foreclose review). And even where Congress has not expressly facilitated judicial review, an agency's "decision may nonetheless be reviewed if regulations or agency practice provide a meaningful standard by which th[e] court may review its exercise of discretion. Accordingly, [the Ninth Circuit] will find jurisdiction to review allegations that an agency has abused its discretion … by failing to comply with its own regulations." ASSE Int'l v. Kerry, 803 F.3d 1059, 1069 (9th Cir. 2015) (quotations omitted).

## A. The "Inappropriate Influence" Requirements Of Section 5(b)(3) And Department Regulations Are Not Committed To Agency Discretion

The "language and structure" of FACA Section 5(b)(3) does not "demonstrate[] that Congress *wanted* an agency to police its own conduct." Mach Mining, 135 S. Ct. at 1651 (emphasis added). As Congress explained, "[p]articularly important [to FACA's goals is] … the requirement … that in creating an advisory committee the creating authority should include 'appropriate

15

provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced … ."  H.R. Rep. No. 92-1017, at 3495-96.  See also Pub. Citizen, 491 U.S. at 459 (recognizing that FACA's "principal purpose was to enhance the public accountability of advisory committees").  Far from "exud[ing] [the] deference" necessary to foreclose judicial review, Webster v. Doe, 486 U.S. 592, 600 (1988), the statute exudes *constraint*.  See also Cargill, 173 F.3d at 339 n.30 (finding Section 5(b)(3) justiciable); Microbiological Criteria, 886 F.2d at 425 (Friedman, J.) (same); id. at 432-34 (Edwards, J.) (same).[4]

Unsurprisingly, therefore, "Defendants point to *no* statutory language … that evinces Congressional intent to insulate the [challenged action] from judicial review."  See Planned Parenthood of N.Y.C. v. HHS, No. 18-cv-5680, --- F. Supp. 3d ----, 2018 WL 4168977, at *10 (S.D.N.Y. Aug. 30, 2018).  Instead, Defendants contend that Congress defined terms such as "inappropriate" or "interest" too

---

[4] As set forth in these decisions and herein, the opinions cited by Defendants should not persuade the Court to forgo review of the RPC's protections against special interests.  See Colo. Entl. Coal. v. Wenker, 353 F.3d 1221, 1231-32 (10th Cir. 2004); Microbiological Criteria, 886 F.2d at 430 (Silberman, J); Physicians Comm. for Responsible Medicine v. Vilsack, No. 16-cv-69, 2016 WL 5930585, at *2 (N.D. Cal. Oct. 12, 2016).  Nor do these cases consider whether Department regulations render Section 5(b)(3) claims justiciable or provide independent grounds for relief.  See infra at 18-20.  In particular, Wenker holds only that a plaintiff may not use the regulations' *special interest* provisions to collaterally challenge compliance with FACA's *fairly balanced* requirement, not that the regulations are unavailable in a challenge under Section 5(b)(3) itself.  353 F.3d at 1231-32.

broadly to actually enable review.  Defs.' Br. 26-27.  But "even where the substance or result of a decision is committed *fully* to an agency's discretion, a federal court has jurisdiction to review agency action."  Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1082 (9th Cir. 2014) (emphasis added) (quotation omitted). In both FACA and non-FACA cases, therefore, courts have no difficulty judging agency action under the statutory standards that so vex Defendants.  See, e.g., Ass'n of Irritated Residents v. EPA, 790 F.3d 934, 949 (9th Cir. 2015) (construing "appropriate"); Conservation Law Found. of New Eng. v. Sec'y of the Interior, 864 F.2d 954, 956 (1st Cir. 1989) (same); cf. Defs. of Wildlife v. Gould, No. 08-cv-56-M-DWM, 2009 WL 10678818, at *1 (D. Mont. Feb. 17, 2009) (determining whether fee award was "appropriate").

Even if Section 5(b)(3) were not justiciable on its face, Department regulations implementing FACA provide ample law for the Court to apply: the regulations state that "[p]ersons or employees of organizations who hold leases, licenses, permits, contracts or claims which involve lands or resources administered by the [BLM] normally shall not serve on advisory committees," and unequivocally require that Committee members disclose these interests. 43 C.F.R. § 1784.2-2(a), (c).  These regulations give additional shape to Plaintiff's claim under Section 5(b)(3) *and* provide an independent basis for relief.  See Compl. ¶ 113.

17

Confronted with readily applicable law, Defendants contend that the Committee is not subject to the regulations because the RPC is not "within the regulatory purview of the BLM."  Defs.' Br. 29.  But the regulations do not purport to apply to committees within BLM's "regulatory purview," whatever Defendants believe that phrase might mean.  Instead, they "contain[] standards and procedures for the creation, operation and termination of advisory committees to *advise* the Secretary ... and [BLM] on matters *relating* to public lands and resources under the administrative jurisdiction of the [BLM]."  43 C.F.R. § 1784.0-1 (emphasis added).  See also id. § 1784.0-2.

BLM has jurisdiction over the 700 million acres of onshore public minerals that are the subject of RPC deliberations,[5] which is why the BLM enjoys an *ex officio* position on the Committee, and why virtually each of the dozens of the onshore policy recommendations submitted by the RPC's Planning, Analysis, and Competitive Subcommittee explicitly advise the Secretary and the BLM on how best to manage that agency's resources.  See, e.g., Ex. A at 2-8.[6]  Indeed, the phrases "BLM" or "Bureau of Land Management" appear exactly 810 times in the RPC's four official meeting summaries.  See RPC Meeting Summaries,

---

[5] See BLM, What We Manage, https://www.blm.gov/about/what-we-manage/national.

[6] Even the many non-BLM recommendations "relate" to BLM within the meaning of the regulations, since valuation decisions rendered by the Department's Office of Natural Resource Revenue inevitably make leasing of BLM resources more or less attractive.

https://www.doi.gov/rpc/rpc-meeting-summaries; Ex. A (subcommittee report for RPC's February 2018 meeting, containing forty-two references to "BLM"). If the RPC is not a committee that advises BLM, then nothing is. See Munoz v. Mabus, 630 F.3d 856, 862 (9th Cir. 2010) ("as a general interpretive principle, the plain meaning of a regulation governs") (quotation omitted); accord Wenker, 353 F.3d at 1225 (reading regulations to apply to "any advisory committee formed to advise the Secretary").

The government urges the Court to overlook the RPC's nexus with BLM because a minority of the Committee's work considers non-BLM resources, 43 C.F.R. § 1784.0-5(e), a non-BLM agency administers the RPC, and the RPC's founding documents neglected to cite Department regulations. But the regulations' text nowhere provides for these exceptions, and for good reason: Defendants' novel interpretation would allow them to easily evade their own regulations by, for example, strategically expanding BLM advisory committee mandates to include negligible, non-BLM considerations, or by housing committees within other Department subcomponents.[7] The Court should foreclose these absurd outcomes and hold that Plaintiff's special interest claims are justiciable under Section 5(b)(3)

---

[7] Furthermore, it is not true that Defendants apply the regulations only to committees considering strictly BLM resources. See 83 Fed. Reg. 10874 (March 13, 2018) (applying regulations to committee advising BLM and the Department of Agriculture).

and agency regulations, just as Congress and the Department itself intended. [8]  See

Crown Pac. v. Occupational Safety & Health Rev. Comm'n, 197 F.3d 1036, 1040

(9th Cir. 1999) ("in examining a regulation, we take into account common sense,

the regulatory purpose and the practical consequences of the suggested

interpretations").

### B. The "Fairly Balanced" Requirement Of Section 5(b)(2) And Department Regulations Is Not Wholly Committed to Agency Discretion

As Plaintiff has noted, Pl.'s Br. 34, the Ninth Circuit's decision in Center for

Policy Analysis on Trade & Health v. U.S. Trade Representative  ("CPATH") does

not render Plaintiff's "fairly balanced" claim nonjusticiable because CPATH did

not consider such a claim under the Department's regulations.  540 F.3d 940, 942

(9th Cir. 2008).  Indeed, CPATH distinguished its application of Section 5(b)(2)

from that in Wenker, which relied on the regulations to find a fairly balanced claim

justiciable.  Id. at 947.

---

[8] Defendants also claim that their interpretation of the regulations is entitled to deference under Auer v. Robbins, 519 U.S. 452 (1997).  Defs.' Br. 31-32.  Not so, because Defendants' interpretation – which appeared for the first time in legal memoranda – reflects a "convenient litigating position," not "the agency's fair and considered judgment on the matter in question." Price v. Stevedoring Servs. of Am., 697 F.3d 820, 829 n.4 (9th Cir. 2012) (quotation omitted). Defendants further suggest that the Department's provisions for ethics disclosures regulate only Committee members, such that Plaintiff must pursue "relief against [those] members themselves."  Defs.' Br. 27 n.11.  But far from rendering the Department powerless to police its committees, the plain text of the regulations shows that it has a duty to do so.  43 C.F.R. § 1784.2-2(c) (disclosure "shall be required" by the agency); id. § 1784.0-1.

The government doubts the Court's ability to parse these regulations because they contain several subsidiary standards, Defs.' Br. 24 (citing 43 C.F.R. § 1784.2-1(a)), but that workaday exercise of judicial review did not trouble the Ninth Circuit, which described the regulations as "sufficient to result in a reviewable controversy." CPATH, 540 F.3d at 947.  Likewise, Wenker noted of 43 C.F.R. § 1784.2-1 that "'[w]hile the difficulty of determining what precisely constitutes a fair balance may incline courts to be deferential in reviewing the composition of advisory committees …, this cannot be grounds for refusing to enforce the provision altogether.'"  353 F.3d at 1233 (citation omitted).[9]  See also Pl.'s Br. 34-35.  True, the regulations are not mathematically precise, but no court – including this Court – has required that level of detail to adjudicate multi-factor tests.  See Rocky Mountain Wild v. FWS, No. CV 13–42–M–DWM, 2014 WL 7176384, at *1 (D. Mont. Sept. 29, 2014) (applying multi-factor test under the Endangered Species Act); Weyerhaeuser, 139 S. Ct. at 371 (multi-factor test justiciable despite "meander[ing] a bit").

Nor did CPATH consider whether a claim under Section 5(b)(2) is justiciable under additional sources of administrative guidance.  The General

---

[9] Contrary to Defendants' reading of Wenker, Defs.' Br. 25, the Tenth Circuit thrice clarified that its discussions of the Department regulations at 43 C.F.R. § 1784.6-1 (which is not at issue here) applied to 43 C.F.R. § 1784.2-1 (which is).  See Wenker, 353 F.3d at 1224, 1233, 1234.  As the Tenth Circuit explained, Section 1784.6-1 does not render Section 1784.2-1 nonjusticiable, but simply "do[es] more" than is required on that score.  Id. at 1234.

Services Administration ("GSA"), for example, has provided five factors that "should be considered in achieving a 'balanced' advisory committee membership," 41 C.F.R. pt. 102-3, subpt. B, app. A, and the Department Manual provides similar standards.  See Ex. D at 2-3.  While Defendants may or may not be correct that the Manual lacks the force of law, see infra at 24, that dispute is irrelevant to the justiciability inquiry, which asks only whether agency practice provides a "meaningful standard" sufficient for review.  Kerry, 803 F.3d at 1069.  Here, GSA and Department guidance supply many such standards, Padula v. Webster, 822 F.2d 97, 100 (D.C. Cir. 1987), and any doubt on this score must be resolved in favor of Congress' preference for advisory committee oversight.

### III.  Plaintiff Has Stated Valid Claims For Relief And Is Likely To Prevail On The Merits Of Those Claims

Defendants pay scant attention to the merits of Plaintiff's claims, contesting only the sufficiency of Counts One and Two under pleading rules.  Defs' Br. 28-33.  Defendants do not dispute that Plaintiff is likely to prevail on the merits of its third and fourth claims for relief, and have waived any such argument.  See B.Y.O.B., Inc. v. Montana, No. CV 15-36-M-DWM, 2015 WL 5671182, at *4 n.2 (D. Mont. Sept. 25, 2015).[10]  Furthermore, Plaintiff's first and second claims easily pass muster under Federal Rules 8 and 12(b)(6).

---

[10] While not offered as a merits argument, the government implies that the RPC represents Plaintiff's interest because the Committee includes representatives of state governors.  Defs.' Br.

22

**A. Defendants Have Unlawfully Shielded Committee Meetings And Records From Public Scrutiny**

Defendants confess that they have not released subcommittee and working group materials to the public, and that they have not opened associated meetings. Defendants will not even allow the public to listen to RPC subcommittee and working group meetings by telephone, an undertaking that – like Plaintiff's requested release of subcommittee and working group materials – would scarcely burden Defendants.  See ECF No. 25-5, Ex. 5-B.  Under Department regulations and guidelines, this secrecy is unlawful.  See Pl.'s Br. 28-30.

Defendants' attempts to evade the regulations and the Manual are meritless. As to the former, the RPC falls squarely within BLM regulations.  See supra at 18-20.  As to the latter, while the Ninth Circuit has said in dicta that the Manual is not binding, see Nat'l Mining Ass'n v. Zinke, 877 F.3d 845, 871 n.27 (9th Cir. 2017), it does not appear to have considered the Department's express statement to the contrary, see Ex. B § 1.2(B), or the Supreme Court's assumption that the Manual consists of agency regulations.  United States v. Fausto, 484 U.S. 439, 442 n.2 (1988).  The sole case on which National Mining Association's footnote relies considered a separate BLM Manual that, unlike the Department's Manual, does not

---

24 n.10.  But the interests of statewide political officeholders are not inevitably aligned with individual landowners, which is why WORC and other citizen groups have frequently litigated *against* state officials.  Defs.' Br. 18 & n.8, 22-23.  Thus, the RPC's charter explicitly provides for public interest representation *in addition* to state representatives.  See ECF No. 18-18 at 2-3.

characterize itself as binding. See McMaster v. United States, 731 F.3d 881, 888-89 (9th Cir. 2013). See also Moore v. Apfel, 216 F.3d 864, 868 (9th Cir. 2000) ("The starting point for determining if an administrative manual is substantive is its text.") (quotation omitted).

Defendants also downplay allegations that the government has violated FACA's *statutory* requirements for disclosure, labeling as "conclusory" accusations that Defendants have unlawfully withheld materials prepared for or by the full Committee. Defs.' Br. 28 n.12 (citing Compl. ¶ 89). This argument simply contests the truth of the Complaint's allegations and therefore has no place in a Rule 12(b)(6) motion. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). Moreover, it is hard to square with evidence that Defendants prepared material for the Committee *and* their preferred special interest, but did not release that material to the public pursuant to FACA. See Annatoyn Decl. ¶¶ 1-3; Ex. C (disseminating otherwise withheld Committee materials to representatives of, *inter alia*, American Petroleum Institute).[11]

Likewise, RPC minutes do not "refute" Plaintiff's allegations that the Committee improperly truncated debate and must therefore open subcommittee

---

[11] These documents were produced by Defendants in response to a Freedom of Information Act request. The Court may take judicial notice of their contents, although not the truth of the matters therein. Wilson v. Odwalla, No. 17-2763 DSF, 2018 WL 3830119, at *3 n.4 (C.D. Cal. July 30, 2018).

and working group meetings under 41 C.F.R. § 102-3.145.  Defs.' Br. 32.

Defendants make no effort to disclaim Vincent DeVito's well-documented and

successful efforts to cut off debate at RPC meetings, and any such attempt would

not be fit for resolution through a Rule 12 motion.  See Pl.'s Br. 25.

Ultimately, Defendants believe they have complied with relevant

transparency requirements because, in their judgment, Plaintiff has all the access it

could need.  Thus, Defendants trumpet that they have disseminated subcommittee

agendas (*after* those meetings have transpired) and that Plaintiff can *apply* to speak

at (though not otherwise attend) subcommittee meetings. [12]  ECF No. 25-5, Ex. 5-

B.  But these breadcrumbs are not what Plaintiff judges to be necessary for its

organizational mandate, and they are far less than what Congress and the

Department have required of the RPC.  While Defendants are free to congratulate

themselves for their meagre attempts at good governance, "such a

'count your blessings' argument is not an adequate rejoinder to the assertion of a

right to judicial review under the APA."  U.S. Army Corps of Eng'rs v. Hawkes

Co., 136 S. Ct. 1807, 1816 (2016).  Compare Lawyers' Comm. for C.R. Under

Law v. Presidential Advisory Comm'n on Election Integrity, 265 F. Supp. 3d 54,

---

[12] Defendants do not specify when the minutes were actually published, and metadata indicates
that some were compiled several weeks after the meetings themselves.  See, e.g.,
Planning, Analysis, & Competitiveness Subcommittee October 26 Meeting Summary,
https://www.doi.gov/sites/doi.gov/files/uploads/pac_meeting_summary_10.26.18_final_0.pdf
(document properties indicating creation on December 20, 2018, nearly two months after the
meeting's conclusion).

69 (D.D.C. 2017) (no Section 10(b) violation where government indicated it would provide committee materials before its first meeting) with Exhibit E (subsequent order requiring index of material never produced before that meeting).

### B. Defendants' Public Interest Finding Is Arbitrary And Capricious

5 U.S.C. app. II § 9(a)(2) requires an agency head to determine "as a matter of formal record" that an advisory committee is "in the public interest in connection with the performance of duties imposed on that agency by law."  Under GSA's regulations, this determination requires that the committee is "essential to the conduct of agency business" and that "the information to be obtained is not already available through another advisory committee or source within the Federal Government."  41 C.F.R. § 102-3.30(a).

The Committee's Charter contains *no* analysis of the RPC's importance to the public interest and *no* § 102-3.30(a) findings.  Instead, it contains just one conclusory sentence stating that Secretary Zinke "determined that the Committee is in the public interest in connection with the responsibilities of the Department." ECF No. 18-18 at 1.  This bare recitation of statutory language does not meet Defendants' duty to "examine the relevant data and articulate a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made."  Defs. of Wildlife v. Zinke, 856 F.3d 1248, 1262 (9th Cir. 2017) (quotation omitted).  See also Amerijet Int'l, Inc. v. Pistole, 753 F.3d 1343,

26

1350 (D.C. Cir. 2014) ("conclusory statements will not do; an agency's statement must be one of reasoning") (quotation omitted).

Defendants offer two reasons why these allegations do not state a claim. First, they observe that the Committee's 2017 Charter contains slightly more detail than a similar charter filed thirteen years ago. Defs.' Br. 33. But Defendants cite no authority for the proposition that conclusory findings pass muster under the APA when they are not quite so bad as *other* conclusory and unlawful findings. To the contrary, the measuring stick for reasoned decisionmaking flows from the APA itself, and does not wax or wane according to agency's historical practice. Turlock Irrigation Dist. v. FERC, 903 F.3d 862, 873 (9th Cir. 2018).

Second, Defendants argue that they need not make the findings contemplated by GSA regulations. Defs.' Br. 34. This argument is mystifying: 41 C.F.R. § 102-3.30(a) is plainly an interpretation of 5 U.S.C. app. II § 9(a)(2), and GSA has explicitly stated that the applicable regulations "provide[] the policy framework that *must* be used *in applying* [FACA]." 41 C.F.R. § 102-3.5 (emphasis added). Defendants tellingly do not explain what § 102-3.30(a) is if *not* an elaboration of the formal determination required by Section 9(a)(2). (It certainly cannot be a procedural requirement for interagency consultation, since that process is laid out elsewhere. See id. § 102-3.60(a).) By "plainly identif[ying] the perceived disconnect between what the [law] permits … and what the [agency has

done]" and "cit[ing] the relevant statutory and regulatory provisions," Plaintiff has adequately alleged a claim under 5 U.S.C. § 706(A)(2) and Rule 8.  <u>Wash. All. of Tech. Workers v. Dep't of Homeland Sec.</u>, 892 F.3d 332, 343-44 (D.C. Cir. 2018).

## IV.    Plaintiff And Its Members Are Irreparably Harmed By The RPC

"Irreparable harm should be evaluated with reference to the purposes of the statute being enforced."  <u>Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.</u>, 886 F.3d 803, 818 (9th Cir. 2018).  In its motion for preliminary relief, Plaintiff articulated three ways in which WORC and its membership were irreparably harmed within FACA's meaning: WORC's lost opportunities to influence RPC policymaking, WORC's lost opportunities to understand and disseminate information related to RPC proceedings, and environmental harm to WORC's membership, which is often *per se* irreparable, <u>All. for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1135 (9th Cir. 2011).  <u>See also</u> Pl.'s Br. 35-39. Defendants do not contest the second and third injuries, and, with respect to the first, contest neither its legal underpinnings nor many of the specific harms articulated in Plaintiff's motion.

Instead, Defendants contend only that Plaintiff is not suffering irreparable harm because, on a single occasion, WORC improbably *surmounted* Defendants' recalcitrance to delay a recommendation favored by the Committee's special interests.  But Defendants' anecdote says nothing of the Department's

overwhelming *pattern* of unlawful Committee management, which "tend[s] to show the threat of a repeated injury[.]" <u>Ctr. for Food Safety v. Vilsack</u>, 636 F.3d 1166, 1173 (9th Cir. 2011). More importantly, Defendants' anecdote is self-defeating. The recommendation described by Defendants was sprung on the public after an indeterminate period of secret development in the RPC's subcommittees and working groups, whither it has presumably returned. Under FACA and relevant regulations, Plaintiff and the public are entitled to participate in the development of such recommendations long before they are put for a final vote, and need not depend on goal line stands to stop disfavored policies. It is Defendants' consistent willingness to force these last-minute contests, not the government's (lopsided) record of wins and losses, that decisively shows irreparable harm to Plaintiff. <u>See</u> Pl.'s Br. 36-37.

## V.    The Public Interest And Equities Overwhelmingly Favor Relief

Brushing aside the dozens of opinions emphasizing the public interest in open and fair advisory committees, Pl.'s Br. 39, Defendants claim that the final preliminary injunction factors militate against relief because Plaintiff's motion comes too close to the RPC's January meeting. This argument is striking given Defendants' request to extend the briefing schedule for Plaintiff's motion by several weeks, wherein Defendants assured the Court that their proposed schedule would allow a ruling "well in advance" of January's meeting, ECF No. 20 at 4-6,

29

even as they neglected to identify the "financial and logistical costs" on RPC

operations that a late-breaking ruling now apparently threatens.  Defs.' Br. 38.

    In contrast, Plaintiff filed its motion two months before the Committee's

January meeting, and only after it sought to resolve its dispute first at the

Committee's September meeting, then via correspondence on November 1, 2018,

and finally through weeks of conference with Defendants' counsel.  (Defendants'

response to Plaintiff's November correspondence, though dated on December 12,

2018, did not issue until December 17, 2018, *i.e.*, hours before Defendants

submitted their opposition to Plaintiff's motion.).  Accord Arc of Cal. v. Douglas,

757 F.3d 975, 990 (9th Cir. 2014) ("delay is but a single factor to consider in

evaluating irreparable injury; courts are loath to withhold relief solely on that

ground") (quotation omitted).  Regardless, the relief sought by Plaintiff need not

cost a penny, since Plaintiff has requested only that Defendants be enjoined until

they comply with FACA, which Defendants could accomplish in a matter of days.

    Defendants' most telling argument on this point is that the RPC *should*

"provide[] Plaintiff and the public with detailed information on the policies it is

considering" and operate in the public interest.  Defs.' Br. 38.  Plaintiff agrees.

But it is precisely because Defendants are not living up to these obligations – the

most important objects of FACA and its implementing regulations – that relief is

appropriate *now*, before the Committee's work is forever beyond public input.

## CONCLUSION

The Court should grant Plaintiff's Motion and deny Defendants' Motion.

DATED this December 31, 2018.

Respectfully submitted,

*/s/* Travis Annatoyn
Travis Annatoyn
Democracy Forward Foundation
1333 H. St. NW
Washington, DC 20005
(202) 601-2483
tannatoyn@democracyforward.org

*/s/* Randy J. Tanner
Randy J. Tanner
BOONE KARLBERG P.C.

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I hereby certify that the above

memorandum contains 7,245 words, excluding the caption, certificates of service

and compliance, table of contents and authorities, and exhibit index.

*/s/ Travis Annatoyn*

Travis Annatoyn, Counsel for Plaintiff

31