# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

MICHAEL H. BAER
Trial Attorney (New York Bar No. 5384300)
U.S. Department of Justice,
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Telephone:   (202) 305-8573
Facsimile:   (202) 616-8470
E-mail:       Michael.H.Baer@usdoj.gov

*Counsel for Defendants*

| | |
|---|---|
| **WESTERN ORGANIZATION OF RESOURCE COUNCILS,** | **CV 18-139-M-DWM** |
| **Plaintiff,** | **MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| **vs.** | |
| **DAVID BERNHARDT,**[1] ***et al.*,** | |
| **Defendants.** | |

---

[1] Because Ryan Zinke is no longer the Secretary of the Interior, Mr. Bernahrdt, the Acting Secretary of the Interior, is automatically substituted as a defendant pursuant to Federal Rule of Civil Procedure 25(d).

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................2

I.    Plaintiff Does Not Have Standing to Bring Three of Its Claims. .........2

    A.    Plaintiff Lacks Organizational Standing.....................................2

    B.    Plaintiff Also Lacks Associational Standing. .............................6

II.    The RPC Is Not Subject to the BLM's FACA Regulations.................8

III.    There Are Not Judicially Manageable Standards for Plaintiff's "Fairly Balanced" and "Inappropriately Influenced" Claims. ............11

    A.    Plaintiff Identifies No Authority that Rescues § 5(b)(2)'s Justiciability. ..............................................................................11

    B.    Section 5(b)(3) Is Similarly Committed to Agency Discretion ...............................................................................12

IV.    Counts One and Two Fail to State a Claim........................................14

    A.    Plaintiff Has Not Alleged a Plausible Violation of FACA's Provisions on Access to Meetings and Records. ......................14

    B.    The RPC Was Properly Established. ........................................15

CONCLUSION ....................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Auer v. Robbins*,
   519 U.S. 452 (1997) .............................................................................. 10

*Colo. Envtl. Coalition v. Wenker*,
   353 F.3d 1221 (10th Cir. 2004) ..................................................... 12, 13

*Ctr. for Law & Educ. v. Dep't of Educ.*,
   396 F.3d 1152 (D.C. Cir. 2005) ........................................................... 4

*Ctr. for Policy Analysis on Trade & Health (CPATH) v. Office of U.S. Trade
   Representative*,
   540 F.3d 940 (9th Cir. 2008) ......................................................... 11, 12

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
   895 F.3d 1166 (9th Cir. 2018) ............................................................. 3

*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*,
   666 F.3d 1216 (9th Cir. 2012) ............................................................. 5

*Havasupai Tribe v. Provencio*,
   906 F.3d 1155 (9th Cir. 2018) ............................................................. 7

*Heckler v. Chaney*,
   470 U.S. 821 (1985) .......................................................................... 11

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir. 2010) ............................................................. 2

*Mont. Envtl. Info. Ctr. v. Stone-Manning*,
   766 F.3d 1184 (9th Cir. 2014) ............................................................. 6

*Moore v. Apfel*,
   216 F.3d 864 (9th Cir. 2000) ......................................................... 14, 15

*Physicians Comm. for Responsible Med. v. Vilsack*,
   No. 16-CV-00069, 2016 WL 5930585 (N.D. Cal. Oct. 12, 2016).................... 11, 12

*Pub. Citizen v. HHS*,
   795 F. Supp. 1212 (D.D.C. 1992)............................................................... 8

*Pub. Citizen v. U.S. Dep't of Justice*,
   491 U.S. 440 (1989) ...................................................................... 3, 4

*Robins v. Spokeo, Inc.*,
   867 F.3d 1108 (9th Cir. 2017) ........................................................... 3

*San Luis & Delta-Mendota Water Auth. v. Haugrud*,
   848 F.3d 1216 (9th Cir. 2017) .......................................................... 6, 8

*Serv. Women's Action Network v. Mattis*,
   320 F. Supp. 3d 1082 (N.D. Cal. 2018)................................................. 4

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)................................................................... 2, 3

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .................................................................... 7, 8

*Wilderness Soc., Inc. v. Rey*,
   622 F.3d 1251 (9th Cir. 2010) ............................................................ 5

## **Statutes**                                             **Page(s)**

5 U.S.C. App. 2 § 10 .......................................................................... 4, 5

5 U.S.C. App. 2 § 5 ....................................................................... 11, 12, 13

## **Regulations**                                     **Page(s)**

41 C.F.R. pt. 102-3................................................................................ 12
41 C.F.R. § 102-3.30.............................................................................. 15
43 C.F.R. 1784.2-1 ................................................................................ 12
43 C.F.R. § 1784.0-5(e) ....................................................................... 9, 10
43 C.F.R. § 1784.2-2 ....................................................................... 4, 5, 13
43 C.F.R. § 1784.5-3............................................................................ 5, 9
43 C.F.R. § 1784.6-1(c) .......................................................................... 12

## <u>Other Authorities</u>                                                    <u>Page(s)</u>

75 Fed. Reg. 6,056-01 ................................................................. 15

82 Fed. Reg. 16,222 ................................................................... 15

83 Fed. Reg. 10,874-01 ................................................................ 9

# EXHIBIT INDEX

**Exhibit**

Royalty Pol'y Comm., *Royalty Policy Committee Subcommittees* ...........................1

Dep't of Interior & Dep't of Agriculture, *National Wild Horse and Burro Advisory Board Charter*, Aug. 22, 2018................................................................2

Dep't of Interior, *Royalty Policy Committee Charter*, Apr. 2, 2012 ........................3

Dep't of Interior & Dep't of Agriculture, *Wildlife and Hunting Heritage Conservation Council Charter*, Feb. 22, 2016........................................................4

# INTRODUCTION

Plaintiff does not dispute that the Royalty Policy Committee ("RPC" or "Committee") has exceeded many of the Federal Advisory Committee Act's ("FACA") requirements, including by providing members of the public with multiple opportunities to comment on Committee proposals and by providing regular updates on subcommittee meetings. *See* Doc. 25 ("Defs.' Br.") at 28-29, 35-37. But Plaintiff continues to portray the work of the RPC in a negative light, despite its own well-documented history of participation in the Committee's business. *See id.* at 35-37. Those efforts do not paper over the shortcomings in Plaintiff's legal theories.

First, Plaintiff's sweeping view of standing—that anyone "with day-to-day interests" in public resources can levy broad procedural challenges against the RPC, Doc. 31 ("Opp'n-Reply Br.") at 2—ignores Article III's requirement that injuries be concrete, particularized, and non-speculative. Second, Plaintiff has failed to articulate *any* judicially manageable standards for assessing its claims under § 5(b) of FACA. And third, Plaintiff continues to rely on inapposite regulations and non-binding guidance for its claims that the Committee was improperly chartered and is not providing the public with sufficient access.

## ARGUMENT[2]

### I.      Plaintiff Does Not Have Standing to Bring Three of Its Claims.

For three of its four claims, Plaintiff has failed to identify a "concrete and particularized" injury in fact that is "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* May 24, 2016 (citation omitted).

#### A.      Plaintiff Lacks Organizational Standing.

Plaintiff, the Western Organization of Resource Councils ("WORC"), contends it is injured by Defendants' failure to properly establish the RPC (Count One), fairly balance the Committee (Count Three), and guard against inappropriate influence (Count Four). *See* Opp'n-Reply Br. 3-10. Tellingly though, Plaintiff never alleges "a diversion of [WORC's] resources" in response to these alleged violations. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Instead, Plaintiff advances three theories of injury, each of which is unavailing.

First, relying on *Spokeo*, Plaintiff claims that Defendants' alleged violations of FACA constitute procedural injuries. *See* Opp'n-Reply Br. 3-6. But Article III

---

[2] Because this brief is a reply in support of Defendants' motion to dismiss, it does not address the arguments in Plaintiff's opposition/reply brief related to its motion for preliminary injunction. *See* Opp'n-Reply Br. 28-30; *see also* Defs.' Br. 35-38.

"requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. The injury at issue in *Spokeo* (and discussed by the Ninth Circuit on remand) was a violation of the Fair Credit Reporting Act's prohibition on disseminating inaccurate information about consumers. *Robins v. Spokeo, Inc.* ("*Spokeo II*"), 867 F.3d 1108, 1110-11 (9th Cir. 2017). That injury was concrete for at least three reasons that do not apply here: (1) Congress created a cause of action to enable consumers to redress the injury, *id.* at 1112; (2) the "real-world implications" of "material inaccuracies in [consumer] reports" are "patent on their face" because such reports are used in "employment decisions" and "much more[,]" *id.* at 1114; and (3) the statutory injury was "at least . . . closely similar *in kind* to others that have traditionally served as the basis for lawsuit[s]" at common law, *id.* at 1115; *see also Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1174 (9th Cir. 2018).

Plaintiff contends that the procedural violations of FACA at issue here are concrete in light of *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440 (1989). But Plaintiff is wrong to suggest that, because the Supreme Court held that a violation of *one* FACA provision was sufficiently concrete, a violation of *any* FACA provision suffices. *See* Opp'n-Reply Br. 4. In *Public Citizen*, the concrete injury was a specific refusal to provide "the names of candidates under consideration by the [advisory committee], reports and minutes of the Committee's

meetings, and advance notice of future meetings"—*i.e.*, information that Congress had required to be public.  491 U.S. at 449; *see also* 5 U.S.C. App. 2 § 10.

Congress, however, has not created a comparably *concrete* interest for the three other FACA claims at issue here.  An abstract interest in a fairly balanced committee, for instance, is distinct from an interest in a specific record or meeting to which Congress has guaranteed access.  And Plaintiff identifies only abstract interests in support of its procedural injury theory—*e.g.*, "policy directly related to Plaintiff's mission" and an alleged exclusion of "Plaintiff's point of view[.]"  Opp'n-Reply Br. 5.  These are canonical examples of injuries that do not satisfy Article III.  *See Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1100 (N.D. Cal. 2018) (plaintiff lacks standing when it raises only "a setback to the organization's abstract social interest" (citation omitted)); *see also Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1162 n.4 (D.C. Cir. 2005).

Second, Plaintiff argues for the first time that it has standing to bring Count Four because of an informational injury stemming from the Bureau of Land Management's ("BLM") conflict-of-interest regulations.   Opp'n-Reply Br. 6 (citing 43 C.F.R. § 1784.2-2).  Even if those regulations applied to the RPC, which they do not (*see infra* at 8-10), they do not confer standing because they do not purport to give Plaintiff the right to information.  The regulations impose obligations on members of BLM advisory committees, but those obligations run

4

from the committee members to the BLM.  Section 1784.2-2 creates no *public* right of access to the disclosures provided to the agency, in sharp contrast with the statutory and regulatory provisions that dictate when committee records must be made public.  *Compare* 43 C.F.R. § 1784.2-2(c), *with* 5 U.S.C. App. 2 § 10(b), *and* 43 C.F.R. § 1784.5-3 (specifying BLM advisory committee records that must be public, with no mention of ethics disclosures).  Plaintiff cites no authority to suggest that it can be injured when there is no legal right to the information it seeks.  *See Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1260 (9th Cir. 2010) (declining "to apply the theory of informational injury in the context of [statutory] procedural rights").

Third, Plaintiff alleges an impairment of "WORC's ability to function as an organization."  Opp'n-Reply Br. 7 (citation omitted).  But this "injury" is a just a re-framed version of its theory of procedural injury—*i.e.*, an alleged inability to advance WORC's abstract interests or "point of view" through the RPC.  *See id.* at 7-8.  And although Plaintiff cites injuries that an organization *can* suffer, it never actually claims that WORC has suffered any of them.  *Compare id.*, *with Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1225-27 (9th Cir. 2012) (highlighting difficulty "recruiting members, obtaining funding, or collecting dues").  Finally, Plaintiff contends it has been excluded from the Committee itself, but Plaintiff concedes that WORC's recent application for

5

membership has not been adjudicated. *See* Opp'n-Reply Br. 8-9. Plaintiff's new contention that "it is inevitable that the government will deny Plaintiff's application," *id.* at 9, is nowhere in the amended complaint and therefore beyond this Court's review at the motion-to-dismiss stage. *See* Am. Compl. ¶ 66, Doc. 14. Because Plaintiff includes "no allegations at all about the likelihood of [the RPC] approving [Plaintiff's] [a]pplication[,]" *Mont. Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1191 (9th Cir. 2014), its injury is not ripe.

## B.   Plaintiff Also Lacks Associational Standing.

Plaintiff does not have associational standing because it has not shown that "it is reasonably probable" that Defendants' actions "will threaten [Plaintiff's members'] concrete interests." *San Luis & Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216, 1232 (9th Cir. 2017), *as corrected* Mar. 23, 2017 (citation omitted). Plaintiff identifies two categories of injuries to its members: first, "policies encouraging the irresponsible leasing of public minerals nearby their properties," and second, "the RPC's failure to consider policies that would ameliorate localized environmental destruction." Opp'n-Reply Br. 10-11. The first theory fails because Plaintiff never links any specific policy that threatens its members to the RPC. Plaintiff highlights the proximity of "federal leases at Bull Mountain and in the Powder River Basin" to its members, *id.* at 11 (emphasis omitted), and Defendants have never disputed that Plaintiff's members may have

concrete interests in those lands.  *See* Defs.' Br. 16.  But Plaintiff has not identified

policy recommendations of *the RPC*—as distinct from prior or future decisions of

other government entities—that threaten those interests.[3]

Plaintiff's second theory—that the RPC has not considered policies that

would *help* its members—fares no better.  Plaintiff cites no authority for the

proposition that a committee's failure to *consider* a plaintiff's preferred policies is

a concrete, non-speculative injury.[4]  And Plaintiff does not dispute that it believes

"*any* person who would benefit from *any* change in federal royalty policy has

standing[.]"  Defs.' Br. 17.  That proposition is unworkable because, for every

advisory committee, there are limitless possible policies that a) would help

particular individuals and b) are not currently being considered.  If every person in

the country could claim injury on the basis of what an advisory committee is *not*

doing for them, that truly "would be tantamount to eliminating the requirement of

---

[3] Plaintiff does claim that "the RPC has specifically called for slashing NEPA reviews in the Powder River Basin."  Opp'n-Reply Br. 12.  But the only mention of the Powder River Basin in the cited recommendations is a discussion of "far-reaching tribal consultations" that allegedly "hold up project NEPA . . . indefinitely."  *Id.*, Ex. A at 4.  Plaintiff has never alleged that its members are injured by policies relating to tribal consultations.

[4] Plaintiff cites *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1162 n.3 (9th Cir. 2018), but that case holds that where "continued mining require[s] approval," a plaintiff's injuries from that mining "are fairly traceable to that approval."  Here, Plaintiff is not challenging the decision to continue leasing at Bull Mountain or in the Powder River Basin.

concrete, particularized injury in fact." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

Finally, Plaintiff fails to meaningfully grapple with a flaw in both of its theories of associational standing:  Plaintiff has never alleged it is "reasonably probable" that, without Defendants' alleged procedural violations of FACA, Plaintiff's preferred policies will be adopted.  *See San Luis*, 848 F.3d at 1232. Plaintiff also never disputes that its amended complaint suggests the opposite— that making the RPC's *recommendations* more Plaintiff-friendly will not change Interior's policies.  *See, e.g.*, Am. Compl. ¶¶ 50-51.  Plaintiff's "speculative chain of events" is thus "simply too attenuated to amount to injury in fact." *Pub. Citizen v. HHS*, 795 F. Supp. 1212, 1214 (D.D.C. 1992).

## II.    The RPC Is Not Subject to the BLM's FACA Regulations.

Counts Two through Four hinge (at least in part) on a determination that the regulations in Subpart 1784 of Title 43, which were promulgated for BLM advisory committees, also apply to the RPC.  *See* Am. Compl. ¶¶ 57, 107, 113.  They do not. Plaintiff does not contest that the regulations appear only in the BLM-specific chapter of Interior's regulations, that the BLM does not administer the RPC, and that the regulations exempt committees that provide advice about public lands "on the Outer Continental Shelf ['OCS']" and Indian lands—both of which are central

to the RPC's work.[5]  43 C.F.R. § 1784.0-5(e).  But Plaintiff argues that the RPC should still be bound by BLM regulations because its work *includes* advice to the BLM and the BLM has an *ex-officio* member on the Committee.  *See* Opp'n-Reply Br. 18; *see also* Pl.'s Prelim. Inj. Br., Ex. C at i, Doc. 18-3 (reflecting *ex-officio* membership from other Interior components).

The text and structure of Subpart 1784 foreclose that argument.  First, 43 C.F.R. § 1784.5-3, specifies that "[a]ll records . . . prepared by or submitted to an advisory committee shall be available for public inspection and copying *in the Bureau of Land Management office responsible for support of that committee*."  *Id.* § 1784.5-3(b) (emphasis added).  That requirement only makes sense if an "advisory committee," as used in Subpart 1784, means a committee that the BLM administers.[6]

---

[5] One of the RPC's three subcommittees, for instance, is dedicated to tribal energy. *See* Royalty Pol'y Comm., *Royalty Policy Committee Subcommittees*, *available at* https://www.doi.gov/sites/doi.gov/files/uploads/subcommittee_and_work_group_list_07172018.pdf (attached as Exhibit 1).

[6] The BLM *does* administer the one committee Plaintiff identifies—not at issue here—as having a mandate beyond BLM lands and resources.  *See* Wild Horse and Burro Advisory Board Meeting, 83 Fed. Reg. 10,874-01 (Mar. 13, 2018) (listing the BLM as the relevant "Agency"); *see also* Dep't of Interior & Dep't of Agriculture, *National Wild Horse and Burro Advisory Board Charter*, Aug. 22, 2018 (attached as Exhibit 2).

Second, Plaintiff's reading of the regulations conflicts with the decision to exclude non-BLM lands from Subpart 1784. *See* 43 C.F.R. § 1784.0-5(e).   In Plaintiff's view, *all* leasing recommendations "relate" to the BLM because they could have an effect on the value of onshore BLM leases.  Opp'n-Reply Br. 18 n.6. But by that logic, an advisory committee whose mandate was limited to offshore OCS leases would still be subject to the BLM's FACA regulations, even though the committee would provide no advice to the BLM.

Finally, Plaintiff claims that Defendants' interpretation is just a "convenient litigating position[.]"  Opp'n-Reply Br. 20 n.8 (citation omitted).  Not so.  Interior consistently has applied Subpart 1784 only to BLM advisory committees.  Prior iterations of the RPC made no mention of Subpart 1784.  *See* Dep't of Interior, *Royalty Policy Committee Charter*, Apr. 2, 2012 (attached as Exhibit 3).  So too for other committees that advise the BLM but are not administered by the BLM. *See* Dep't of Interior & Dep't of Agriculture, *Wildlife and Hunting Heritage Conservation Council Charter*, Feb. 22, 2016 (attached as Exhibit 4) (listing the Director of the BLM as an *ex officio* member but not applying the BLM's FACA regulations).   Because the BLM's FACA regulations are "a creature of [Defendants'] own regulations," Defendants' interpretation is "controlling unless plainly erroneous or inconsistent with the regulation[s]." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (citation omitted).

10

### III. There Are Not Judicially Manageable Standards for Plaintiff's "Fairly Balanced" and "Inappropriately Influenced" Claims.

Counts Three and Four are non-justiciable, and Plaintiff has not identified any "meaningful standard" for this Court to apply to those claims. *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The Ninth Circuit has already held that the "fairly balanced" language in 5 U.S.C. App. 2 § 5(b)(2) overcomes the general presumption that agency action is reviewable. *See Ctr. for Policy Analysis on Trade & Health (CPATH) v. Office of U.S. Trade Representative*, 540 F.3d 940, 942 (9th Cir. 2008), *as amended* (Oct. 8, 2008). And the only court in this circuit to consider the question has held that § 5(b)(3) also is non-justiciable. *Physicians Comm. for Responsible Med. v. Vilsack*, No. 16-CV-00069, 2016 WL 5930585, at *1 (N.D. Cal. Oct. 12, 2016) ("The control of a Ninth Circuit decision is enough to dispose of this case.").

### A. Plaintiff Identifies No Authority that Rescues § 5(b)(2)'s Justiciability.

Because the Ninth Circuit has already held that Congress left FACA "devoid" of judicially manageable standards for "fairly balanced" claims, *CPATH*, 540 F.3d at 945, the only question is whether *another* authority transforms § 5(b)(2) into something justiciable. Plaintiff provides none. Although Plaintiff argues that the "fairly balanced" analysis is nothing more than a "workaday exercise of judicial review," Plaintiff never actually articulates any judicially manageable standards or

11

applies them to the facts of this case.  *See* Opp'n-Reply Br. 20-22.  Moreover, Plaintiff ignores the Ninth Circuit's explanation of the problem with § 5(b)(2)— that it does not "articulate what perspectives must be considered when determining if the advisory committee is fairly balanced."  *CPATH*, 540 F.3d at 945.  That same problem plagues the other authorities that Plaintiff invokes.  *See* Defs.' Br. 24; *see also* 43 C.F.R. 1784.2-1 (providing no standards for a "geographic and interest-specific" balance)[7]; 41 C.F.R. pt. 102-3, subpt. B, app. A (noting that "the types of specific perspectives required" will shape whether a committee is "balanced"); Opp'n-Reply Br., Ex. D, 308 DM § 8.3(A)(1) ("The membership of a committee necessarily depends upon its functions.").

## B.   Section 5(b)(3) Is Similarly Committed to Agency Discretion.

Section 5(b)(3) provides no more meaningful standards for judicial review than § 5(b)(2).  *See Physicians Comm.*, 2016 WL 5930585, at *5-7.  But as with its discussion of § 5(b)(2), Plaintiff does not attempt to offer standards for the relevant statutory terms—e.g., what constitutes a "special interest" or "inappropriate[] influence[]."  *See* Opp'n-Reply Br. 15-17; *see also Wenker*, 353 F.3d at 1231-32

---

[7] Plaintiff continues to misread *Colorado Environmental Coalition v. Wenker*, 353 F.3d 1221 (10th Cir. 2004) (per curiam).  *See* Opp'n-Reply Br. 21 n.9.  There, the court explained that the language of 43 C.F.R. § 1784.2-1 (the only regulation arguably at issue here) "closely tracks the language of FACA's § 5(b)(2)."  *Wenker*, 353 F.3d at 1232.  By contrast, it was *only* the language of 43 C.F.R. § 1784.6-1(c) (which is not at issue here) that allowed the court to "know[] which categories of interests are entitled to representation[.]"  *Id.* at 1233-34.

(holding that a claim "under § 5(b)(3) is not justiciable" because "the statute does not give [courts] any guidance as to when the line is crossed between appropriate and inappropriate influence").  Plaintiff must thus rely on the inapplicable BLM regulations to salvage its § 5(b)(3) claim.  *See* Opp'n-Reply Br. 17 (citing 43 C.F.R. § 1784.2-2(a)); *see also supra* at 8-10.  But Plaintiff still has not explained how the BLM regulations define what are otherwise judicially unmanageable terms.  *See* Defs.' Br. 27

In any event, it now appears that Plaintiff is not really bringing a § 5b(3) challenge after all; it is simply arguing that Defendants violated 43 C.F.R. § 1784.2-2.  Plaintiff fails to explain how Defendants violated § 5(b)(3) *other* than through an alleged violation of § 1784.2-2.  And Plaintiff claims, for the first time, that those regulations "provide an independent basis for relief," separate and apart from FACA.  Opp'n-Reply Br. 17.  That theory is not in Plaintiff's amended complaint.  There, although Plaintiff cited Defendants' alleged violation of § 1784.2-2 as an *example* of a violation of FACA's "inappropriately influenced" provision, the only provision that Plaintiff claimed was actionable under the APA was "Defendants' failure to ensure that the RPC will not be inappropriately influenced by special interests[.]"  Am. Compl. ¶¶ 112-14.  Because Plaintiff has either abandoned that theory or failed to articulate judicially manageable standards for adjudicating a § 5(b)(3) claim, Count Four should be dismissed.

## IV.    Counts One and Two Fail to State a Claim.

### A.    Plaintiff Has Not Alleged a Plausible Violation of FACA's Provisions on Access to Meetings and Records.

For Count Two, Plaintiff focuses almost[8] exclusively on "Department regulations and guidelines" concerning access to meetings and records, rather than violations of FACA itself.  *See* Opp'n-Reply Br. 23.  The only regulations Plaintiff cites are the BLM regulations that do not apply here, *see supra* at 8-10, which leaves the Department of Interior Manual as Plaintiff's last foothold.  The language that defines the Manual's "Scope" explains that the Manual "prescribes the policies and general procedures for administrative activities and specific program operations."  Opp'n-Reply Br., Ex. B, 011 DM § 1.2.  But that kind of information does not have "the force and effect of law[.]"  *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000) (explaining that "general statements of policy or rules of agency organization, procedure or practice" do not have the force of law (citation omitted)).

---

[8] Plaintiff claims that a FOIA response reveals material that was "prepared . . . for the [full] Committee" but not released to the public.  Opp'n-Reply Br. 24; *id.*, Ex. C.  But that response, which the amended complaint incorporates by reference, *see* Am. Compl. ¶ 89, indicates that the relevant email was circulated to the Planning and Analysis Subcommittee, not the full Committee.  *Compare* Opp'n-Reply Br., Ex. C at 1, *with* Ex. 1 at 1-2 (reflecting membership of the subcommittees, though several Planning, Analysis & Competitiveness Subcommittee members are listed only in the "Work Group Membership" table).

### B.   The RPC Was Properly Established.

Plaintiff identifies no language—in FACA or the General Service Administration's ("GSA") implementing regulations—that requires the kind of *written* findings that Plaintiff claims are obligatory.  Plaintiff does not dispute that the Secretary of Interior made the determination that FACA requires: that the RPC is "in the public interest in connection with the performance of duties imposed on that agency by law."  *See* 82 Fed. Reg. 16,222 (Apr. 3, 2017).  The ubiquity of similar findings for other advisory committees reinforces that FACA does not require more.  *See, e.g.*, 75 Fed. Reg. 6,056-01 (Feb. 5, 2010).  Finally, the GSA regulations that Plaintiff cites are "policies to be followed" by the Secretary "in establishing and operating advisory committees," but they do not impose any requirement to make written findings.  41 C.F.R. § 102-3.30.

### CONCLUSION

For the foregoing reasons, the amended complaint should be dismissed.

Dated: January 9, 2019                    Respectfully submitted,

                                          JOSEPH H. Hunt
                                          Assistant Attorney General

                                          MARCIA BERMAN
                                          Assistant Branch Director

                                          */s/ Michael H. Baer*
                                          MICHAEL H. BAER
                                          Trial Attorney
                                          U.S. Department of Justice,

Civil Division, Federal Programs Branch

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I certify that this brief contains 3,499 words.

I relied on the word count function in Microsoft Word, which was used to prepare

this document.

*/s/ Michael H. Baer*
Michael H. Baer
