```
                                                                    FILED
       IN THE UNITED STATES DISTRICT COURT                        JAN 16 2020
            FOR THE DISTRICT OF MONTANA                      Clerk, U.S. District Court
                  MISSOULA DIVISION                            District Of Montana
                                                                    Missoula
```

| | |
|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS, | CV 18–139–M–DWM |
| Plaintiff, | ORDER |
| vs. | |
| DAVID BERNHARDT, et al., | |
| Defendants. | |

In August 2018, Plaintiff Western Organization of Resource Councils ("Western") sued various officials within the Department of the Interior ("Defendants"), challenging the reestablishment and operation of the Royalty Policy Committee ("Royalty Committee" or "Committee") under the Federal Advisory Committee Act ("FACA"). In August 2019, this Court determined that the Committee had been improperly established in violation of Section 9 of FACA, (Doc. 59 at 8–18), and enjoined "[f]urther use of or reliance on the Royalty Committee's recommendations," (*id.* at 28). Western now seeks leave to conduct discovery regarding Defendants' compliance with that order. (Doc. 63.)

Though the present motion is one for discovery, the fundamental dispute is over the scope of the injunction. Western argues that the continual processing of Applications for Permits to Drill ("APDs") as recommended by the Committee—

1

even if those recommendations pre-date this lawsuit and the injunction order—constitutes "[f]urther use of or reliance on the Royalty Committee's recommendations." (Doc. 59 at 28.) Defendants, on the other hand, insist that the Court's order "does not invalidate, or render useless, agency guidance documents issued *before* the Court's injunction." (Doc. 67 at 13.) For the purposes of post-judgment discovery, Western has the better argument.

## FACTUAL BACKGROUND

A complete factual background is included in the Court's August 2019 Order. (*See* Doc. 59 at 2–6.) Relevant here, Western argues that two guidance documents indicate the Department's continued use of and reliance on Committee recommendations. The documents address the procedures that Bureau of Land Management ("BLM") offices follow when considering requests for action that affect federal land or resources, such as APDs under the National Environmental Policy Act ("NEPA"). According to Western, the substance of these documents was based on Committee recommendations proposed by the "Planning, Analysis, and Competitiveness Subcommittee" and adopted at the Royalty Committee's June 2018 meeting.

### A. Information Bulletin 2018-061

On June 6, 2018, BLM issued an "Information Bulletin" to "remind BLM offices of the existing procedures for streamlining NEPA review under applicable

2

statutes, regulations, and guidance and to encourage BLM offices to use these tools consistently and effectively." (Ex. A, Doc. 64-1 at 2–3.) The Bulletin discussed three tools for doing so, directing offices to attempt to fit new actions into existing NEPA analyses or apply a categorical exclusion and to turn to the preparation of new NEPA decision documents only as a last resort. (*Id.* at 3.) Western focuses on the second tool, or the use of categorical exclusions in reviewing oil and gas leases. As explained in the Bulletin, "Section 390 of the Energy Policy Act established a 'rebuttable presumption' that the use of a [categorical exclusion] under NEPA would apply to certain development activities on federal oil and gas leases." (*Id.* at 4.) As such, BLM need not find "extraordinary circumstances" to apply an exclusion. (*Id.*) At the June 2018 meeting, the Planning, Analysis, and Competitiveness Subcommittee issued a proposal recommending: "BLM should issue an Instruction Memorandum (IM) directing all field offices to issue Categorical Exclusions (CX) when any of the Energy Policy Act of 2005 . . . Section 390 criteria are met, unless specifically rebutted." AR0663–64, 709.

### B.  Permanent Instruction Memorandum 2018-014

On June 12, 2018, BLM issued a Permanent Instruction Memorandum. (Ex. B, Doc. 64-2 at 2.) Like the Bulletin, the Memorandum adopts the three-tiered approach to NEPA analysis, but in the specific context of Federal minerals being produced from well pads located entirely on non-Federal land. (*Id.* at 4–8, 10.)

3

The Memorandum cautions, however, that "the[] policy clarifications do not reflect a change in overall policy but are designed to identify and eliminate unnecessary permitting and review requirements and inconsistencies where the BLM has limited authority." (*Id.* at 16.) In its June 2018 meeting, the Royalty Committee approved a second Subcommittee recommendation addressing NEPA review of non-Federal surface off-lease and analysis of horizontal wells. *See* AR0664–65.

## ANALYSIS

Western argues that the Bulletin and the Memorandum show that Defendants are continuing to implement the Committee's recommendations despite the Court's injunction. They therefore seek post-judgment discovery "to ascertain that scope of Defendants' compliance and determine the need, if any, for further proceedings enforcing the Court's order." (Doc. 64 at 11.) A court has an "inherent power to enforce its judgments." *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008). "Indeed, a district court should give careful attention to a request for discovery to establish noncompliance with one of its judgments." *Id.* When considering whether to permit post-judgment discovery, "the kind and amount of evidence of noncompliance required to justify discovery is, necessarily, considerably less than that needed to show actual noncompliance. If significant questions regarding noncompliance have been raised, appropriate discovery should be granted." *Id.* at 1034.

Pursuant to Rule 65(d) of the Federal Rules of Civil Procedure, an injunction must "state its terms specifically[] and . . . describe in reasonable detail . . . the act or acts restrained or required." Here, the Court enjoined "[f]urther use of or reliance on the Royalty Committee's recommendations." (Doc. 59 at 28.) The present defugalty arises from the word "further." Defendants are correct that "further" is generally a forward-looking term. But, continuing to rely on policy guidance that was, in turn, based on the Committee's recommendations is further use or reliance. That interpretation is the only one that is consistent with the analysis underlying the injunction itself. The Royalty Committee was unlawful from the start. (Doc. 59 at 25.) Thus, everything the Committee did and every recommendation it issued was unlawful as well. Western has raised a significant question as to whether Defendants continue to rely on Committee recommendations in the present regardless of when they were issued.

This makes this case distinguishable from *Mickelson Farms, LLC v. Animal & Plant Health Inspection Service*, 2018 WL 4259225, at *2 (D. Idaho Sept. 6, 2018). In *Mickelson*, the court clarified that its FACA injunction was "limited to prospective relief," allowing plaintiffs to "only challenge future agency decisions, actions, rules, or protocols." *Id.* Retrospective relief was off the table. *Id.* Here the issue is not a challenge to the June 2018 adoption of either the Bulletin or the Memorandum, but rather the continued use of those documents in the present to

approve current activities. As at least one other court has recognized, delineating the terms of a FACA injunction may result in an "admittedly . . . imperfect result." *Idaho Wool Growers Ass'n v. Schafer*, 2009 WL 3806371, *4 (D. Idaho Nov. 9, 2009). But so long as Defendants are taking action in the present—such as approving APDs—that is based on the Royalty Committee's unlawful recommendations, that prospective conduct potentially falls within the scope of the Court's injunction.

Defendants further argue that even if the injunction reaches certain past conduct, the policy documents identified here were issued by the agency *not* the Committee. But that implicates the very question Western seeks to answer: what was the basis of the documents? While Defendants may ultimately be able to show there has not been a violation of the injunction, they have not persuasively argued that no further inquiry is warranted. To the contrary, the timing of the Bulletin and Memorandum raises a significant question about their connection to the recommendations issued at the Royalty Committee's June 2018 meeting.

## CONCLUSION

Accordingly, IT IS ORDERED that Western's motion for post-judgment discovery (Doc. 63) is GRANTED. Western may pursue discovery in two areas: (1) the extent to which the Committee's recommendations informed the Bulletin and Memorandum; and (2) the extent to which that guidance or the Committee's

6

recommendations have informed APD approvals since the Court's order.

DATED this 16th day of January, 2020.

Donald W. Molloy, District Judge
United States District Court